**In re Charles LOPEZ and Julie Lopez, Debtors.**

**Bankruptcy Receivables Management, Appellant,**

**v.**

**Charles Lopez and Julie Lopez, Appellees.**

**BAP No. EC–01–1178–MoHRy.**

**Bankruptcy No. 98–31825–A7.**

**Adversary No. 99–2726.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 24, 2002.

Filed March 12, 2002.

Richard W. Snyder, Tustin, CA, for Bankruptcy Receivables Management.

John R. Roberts, Placerville, CA, for Charles and Julie Lopez.

Before MONTALI, HOLLOWELL[1] and RYAN, Bankruptcy Judges.

---

**1.** Hon. Eileen W. Hollowell, Bankruptcy Judge for the District of Arizona, sitting by designation.

## OPINION

MONTALI, Bankruptcy Judge.

Bankruptcy Receivables Management ("BRM") appeals the bankruptcy court's judgment rescinding a post-discharge agreement between BRM and Charles and Julie Lopez ("Debtors" or "the Debtors"), ordering BRM to pay the Debtors $85.00, and ordering the Debtors to turn over certain jewelry to BRM. We hold that the post-discharge agreement violated Bankruptcy Code section 524[2] and was therefore invalid and unenforceable. We also hold that the Debtors were entitled to rescind the post-discharge agreement under California law. Accordingly, we affirm the bankruptcy court's rulings.

## I.

### FACTS

Pre-petition, Debtors purchased a diamond ring and other jewelry from Samuels Jewelers, Inc. ("Samuels") for $5,623.01. Samuels financed the purchase and took a security interest in the jewelry pursuant to a security agreement executed by Debtors.

On August 3, 1998, Debtors filed a petition under Chapter 7 of the Bankruptcy Code. In their Chapter 7 Statement of Intention—Joint Debts, Debtors declared their intention to reaffirm their debt to Samuels. During the pendency of the case, Samuels assigned its rights to BRM. BRM then sent a reaffirmation agreement to Debtors' attorney, American Law Center ("ALC"). ALC forwarded the proposed reaffirmation agreement to Debtors with a cover letter counseling against reaf-

---

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

firmation. Debtors did not execute the reaffirmation agreement.

Debtors received their discharge on November 5, 1998. Three months later, Shannon Vinciguerra ("Vinciguerra"), a legal assistant employed by BRM, sent a letter to ALC. The letter demanded the return of the jewelry, but also offered Debtors the option of retaining the jewelry if they paid a lump sum or if they executed a post-discharge "retention agreement" accompanying the letter. The agreement provided, among other things, that Debtors could retain the jewelry if they paid the remaining balance of the debt in monthly installments with interest. Vinciguerra's letter warned that if counsel did not respond within ten days, BRM would assume that ALC was no longer representing Debtors.

In fact, ALC was no longer representing Debtors. The bankruptcy court considered, and rejected as not credible, evidence from ALC's principal that he forwarded the letter to Debtors. Instead, the court believed Debtors, who testified that they never received the letter or the retention agreement from their former attorney.

When ALC did not answer BRM's letter, BRM contacted Debtors directly. In February 1999, BRM sent Debtors another agreement (the "second post-discharge agreement"), which provided that BRM would forebear from repossessing the jewelry if Debtors agreed to pay BRM the entire remaining contract debt, $3,030.35, plus interest at the contract rate of 22.8% per annum, all payable at the rate of $100.00 per month.

Vinciguerra telephoned Debtors concerning the jewelry and the second post-discharge agreement. According to Mr. Lopez, Vinciguerra or another BRM agent told him that he "had to sign" the second post-discharge agreement and return it

immediately to BRM. Mr. Lopez testified that BRM did not discuss any other options with him, did not explain that he had the right to simply return the jewelry, did not explain the terms of the second post-discharge agreement, and did not suggest that the Debtors seek the advice of counsel.

According to the bankruptcy court, Vinciguerra declared that she did not demand that the Debtors sign the second post-discharge agreement and further did not threaten them with legal action. She also declared that she told Debtors that they could surrender the jewelry if they chose to do so.

The bankruptcy court did not find Vinciguerra's and BRM's version of events to be credible, and determined that BRM told Debtors that they were required to sign the second post-discharge agreement.

On February 27, 1999, Debtors signed the second post-discharge agreement after altering it to reduce monthly payments to $85.00 and returned it to BRM. They made one payment of $85.00. They also made a payment of $170.00 but stopped payment on that check before it was presented for payment by BRM. The Debtors contended that they attempted to return the jewelry but BRM would not accept it.

Because BRM threatened to sue them, the Debtors reopened their bankruptcy case on November 11, 1999, and initiated the underlying adversary proceeding by filing a complaint on December 3, 1999. The complaint originally included causes of action for violation of the discharge injunction, fraud, undue influence, and malice. By order dated March 14, 2000, the bankruptcy court dismissed the second, third and fourth claims for relief. Although the order specified that Debtors could file an amended complaint within thirty days, Debtors did not do so. As a result, Debt-

ors' only remaining claim for relief was their first cause of action, which sought damages for violation of the discharge injunction.

On January 1, 2000, BRM filed a counterclaim for breach of the second post-discharge agreement, declaratory relief, attorney fees, and conversion. BRM asserted that the second post-discharge agreement was valid, that the Debtors breached their obligations under the second post-discharge agreement, and that Debtors refused a demand for turnover of the jewelry. Debtors' answer to BRM's counterclaim denied that the second post-discharge agreement was enforceable, denied that BRM or Samuels demanded the return of the jewelry, and denied that the jewelry had a value of $3,030.35.

On December 11, 2000, BRM filed a motion for summary judgment, which the bankruptcy court granted in part and denied in part in a written opinion dated January 9, 2001. The bankruptcy court agreed with BRM's argument that Debtors had no private right of action for damages arising from a violation of the discharge injunction and granted BRM's motion on this point. However, the court found implicit in Debtors' declaratory relief claim the contention that the second post-discharge agreement was an unenforceable reaffirmation agreement. As Debtors had no right to damages, the bankruptcy court construed the complaint as a request that the court declare the agreement to be unenforceable.

The bankruptcy court also ruled that the second post-discharge agreement was not a valid reaffirmation agreement because it was not made before the court entered Debtors' discharge. The court further concluded that the second post-discharge agreement was not a valid redemption agreement pursuant to section 722 because it was not approved by the court in accor-

dance with Rule 6008. The court indicated that the agreement might be a valid post-petition agreement supported by new consideration; however, the court found a genuine issue of material fact remained as to whether BRM gave Debtors adequate consideration for the agreement. The court also found a genuine issue as to whether the value of the collateral exceeded the amount Debtors agreed to pay. The court expressed concern that it might nullify the protections afforded to debtors by sections 522(c) and (d) if it enforced a contract that required a debtor to pay more than the value of a creditor's collateral for a discharged debt.

After conducting a trial, the bankruptcy court entered its Memorandum Decision and its Judgment. The court ruled that BRM and Debtors did not form a new contract because Debtors were under the misapprehension that they had no alternative but to execute the second post-discharge agreement. Because the Debtors did not freely consent to the agreement, the court found that the second post-discharge agreement was voidable under California law based on unilateral mistake and that rescission of the agreement was the proper remedy.

As an alternative ground for relief, the bankruptcy court concluded that the second post-discharge agreement was invalid because it was not supported by new consideration.

The judgment rescinded the second post-discharge agreement, ordered BRM to refund the $85.00 payment made by the Debtors, and ordered the Debtors to turn the jewelry over to BRM. BRM timely filed its notice of appeal.

## II.

### ISSUES

A. Whether a post-discharge agreement between a debtor and the holder of a

secured claim, not in compliance with the requirements of section 524(c), can be valid or enforceable, when the consideration for the agreement is based in part on a discharged debt.

B. Whether the court erred in determining that the complaint contained an implicit cause of action for declaratory relief.

C. Whether a debtor's request that a bankruptcy court declare a post-discharge agreement between the debtor and the holder of a secured claim invalid constitutes an impermissible private right of action for violation of the discharge injunction.

D. Whether the bankruptcy court properly determined that Debtors were entitled to rescind the second post-discharge agreement under California law.

### III.

### *STANDARD OF REVIEW*

 The bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir.2001). The bankruptcy court's application of California law is a question of statutory construction which is reviewed *de novo*. *See Moen v. Hull (In re Hull)*, 251 B.R. 726, 730 (9th Cir. BAP 2000) (citing *Steinberg v. Crossland Mortgage Corp. (In re Park at Dash Point, L.P.)*, 985 F.2d 1008, 1010 (9th Cir. 1993)).

 The bankruptcy court's choice of remedies is reviewed for an abuse of discretion, since it has broad equitable reme-

dial powers. *Goldberg v. Bank of Alex Brown (In re Goldberg)*, 168 B.R. 382, 384 (9th Cir. BAP 1994) (citing *Stone v. City & County of San Francisco*, 968 F.2d 850, 861 (9th Cir.1992), *cert. denied*, 506 U.S. 1081, 113 S.Ct. 1050, 122 L.Ed.2d 358 (1993)). Under this standard, "a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Goldberg*, 168 B.R. at 384 (quoting *In re Pace*, 159 B.R. 890, 897 (9th Cir. BAP 1993)).

 The panel may affirm the bankruptcy court on any grounds supported by the record. In addition, the panel may consider a legal issue not raised on appeal where the matter is one of law and further development of the factual record is not necessary. *Canino v. Bleau (In re Canino)*, 185 B.R. 584, 594 (9th Cir. BAP 1995).

### IV.

### *DISCUSSION*

A. *A post-discharge agreement between a debtor and the holder of a secured claim which does not comply with the requirements of section 524(c) cannot be valid or enforceable where the consideration is based in part on a discharged debt.*

 Subject to certain exceptions enumerated in section 523, section 727 discharges a debtor from all debts that have arisen before the date of the order of relief. *In re Price*, 871 F.2d 97, 98 (9th Cir.1989).[3] Section 524(a) "permanently enjoins all creditor actions to collect debts

---

**3.** Section 727(b) provides, in relevant part:
Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order

for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case....

discharged under section 727." *In re Poule*, 91 B.R. 83, 87 (9th Cir. BAP 1988).[4] A debtor may voluntarily repay a discharged debt. 11 U.S.C. § 524(f).[5] A debtor may also waive the protections of section 524(a) by entering into a new agreement with a creditor; however, "[t]he agreement will be binding only if made in compliance with Section 524(c) and (d)." *Republic Bank of Cal., N.A. v. Getzoff (In re Getzoff)*, 180 B.R. 572, 574 (9th Cir. BAP 1995).

BRM does not contend that the second post-discharge agreement satisfied the requirements of section 524. Nevertheless, BRM submits the agreement is enforceable because it gave new and valuable consideration to Debtors in exchange for their promise to pay. BRM notes that Debtors were in default under the original contract with Samuels and therefore had no right to retain the property under *McClellan Federal Credit Union v. Parker (In re Parker)*, 139 F.3d 668 (9th Cir.

1998). As a result, BRM contends its promise to forbear from repossessing the jewelry if the Debtors agreed to pay the remaining contract balance plus interest at the rate of 22.8% per year constituted new consideration. According to BRM, this new consideration makes the second post-discharge agreement enforceable notwithstanding section 524.

BRM's argument of new consideration misses the mark. Whether or not the Debtors received new consideration is irrelevant, because section 524(c) "is not concerned with the consideration that the debtor received." *In re Zarro*, 268 B.R. 715, 720 (Bankr.S.D.N.Y.2001). Instead, the statute provides that agreements between a debtor and a claim holder, whose consideration is based even in part on a dischargeable debt, is *only* enforceable if it complies with the applicable procedural requirements of section 524(c).[6] In other words, if the agreement does not comply with section 524 and any part of the con-

**4.** Section 524 provides, in relevant part:

(a) A discharge in a case under this title—
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, whether or not discharge of such debt is waived;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. . . .

**5.** Section 524(f) provides: "Nothing contained in [§ 524(c) or (d)] prevents a debtor from voluntarily repaying any debt."

**6.** Section 524(c) lists requirements for obtaining a valid reaffirmation agreement.

Reaffirmation agreements must (1) be made before the court grants the debtor's discharge, (2) contain clear and conspicuous statements advising the debtor (a) of the right to rescind the agreement and (b) that the agreement is not required by law, and (3) be filed with the court. Debtors may rescind the agreement by giving notice of rescission by the later of (a) the date the debtor receives his discharge or (b) 60 days after the agreement is filed with the court.

For a debtor represented by an attorney, the attorney must file a declaration stating that (1) the agreement represents a fully informed and voluntary agreement by the debtor, (2) does not impose an undue hardship on the debtor or a dependent and (3) the attorney has fully advised the debtor of the legal effect and consequences of reaffirmation agreements and of a default under the agreement.

For a debtor not represented by an attorney, the court must approve the agreement, determining that the agreement is in the debtor's best interest and does not impose an undue hardship on the debtor or a dependent, except to the extent the consideration for the agreement is based in part on a consumer debt that is not secured by the debtor's real property.

sideration given by a debtor involves his or her promise to pay a discharged debt, the agreement is invalid. *Getzoff,* 180 B.R. at 575; *Liptz & Roberts, Chartered Pension Plan Trust v. Stevens (In re Stevens),* 217 B.R. 757, 761 (Bankr.D.Md.1998); *Cherry v. Arendall (In re Cherry),* 247 B.R. 176, 185–86 (Bankr.E.D.Va.2000); *In re Gardner,* 57 B.R. 609, 610–11 (Bankr.D.Me. 1986). This interpretation is not only supported by the Bankruptcy Code, it also comports with common sense. As one bankruptcy court recently noted:

> Every reaffirmation agreement involves some element of new consideration. Otherwise, the debtor would not agree to pay the discharged debt. If new consideration saved a non-complying reaffirmation agreement, little would remain of the protection afforded by § 524(c).

*Zarro,* 268 B.R. at 721.

The bankruptcy court considered our previous decision, *Watson v. Shandell (In re Watson),* 192 B.R. 739 (9th Cir. BAP 1996), in finding the post-discharge agreement was invalid because it was not supported by new consideration. Although *Watson* has been cited for the proposition that the existence of new consideration is sufficient to create a new contract (*see Stevens,* 217 B.R. at 760), outside of the protection of section 524, the decision is not contrary to *Getzoff, Zarro,* and the other cases just cited.

In *Watson,* a dispute arose over the debtor's pre-petition purchase of a physical therapy business. As part of the deal, the debtor had executed promissory notes which were secured in part by a security interest in the business' outstanding accounts receivable. After the debtor defaulted on the notes, the seller filed suit in state court and obtained injunctive relief. The state court ordered the debtor to provide information about the accounts and turn over proceeds. The debtor then filed a Chapter 7 petition. The seller obtained relief from the automatic stay to pursue the state court action and collect the accounts receivable.

Shortly thereafter, the parties settled the state court litigation. Pursuant to the settlement, the seller released the debtor from all personal liability under the promissory note. In return, the debtor conceded the seller's *in rem* rights to recover the collateral securing the note and agreed to turn over all pre-petition accounts receivable.

The debtor, however, later refused to turn over the accounts receivable, and the seller prevailed in a second action in state court to enforce the settlement agreement. The state court entered a judgment awarding the seller damages and attorney fees. The debtor then attempted to reopen his bankruptcy case to seek a determination that the state court's judgment in the second suit constituted an impermissible effort to enforce his discharged liability on the promissory notes. The panel sustained the bankruptcy court's denial of the motion to reopen, concluding that because the first state court proceedings were allowed to proceed, the debtor's agreement was not a reaffirmation of the debt on the original note. Instead, the panel found that the agreement "concerned his obligation to provide collateral that had been released from the automatic stay." *Watson,* 192 B.R. at 748. Therefore, the settlement agreement did not constitute an improper reaffirmation agreement. The panel specifically distinguished these facts from instances where "part of the consideration for the new contract is based on a debt that is dischargeable." *Id.*

In this case, Debtors have no obligation to BRM discernible in the second post-discharge agreement without reference to Samuels' pre-petition loan to them: what-

ever consideration the Debtors may have given, it was predicated on that discharged obligation.

Because the second post-discharge agreement was based in part on a discharged debt, BRM should have complied with section 524. To hold section 524(c) inapplicable to post-discharge agreements in such circumstances would nullify section 524(c) whenever a creditor could convince a debtor to sign such an agreement. If Congress wanted foxes guarding the henhouse, it would not have incorporated section 524(c) into the Bankruptcy Code.

B. *The bankruptcy court did not err when it determined that the complaint contained an implicit cause of action for declaratory relief.*

 In its Memorandum Decision on BRM's motion for summary judgment, the bankruptcy court ruled that Debtors were not entitled to recover damages for a violation of the discharge injunction. The court, however, found implicit in Debtors' claim for relief the contention that the agreement was an unenforceable reaffirmation agreement. Therefore, the court construed the claim "to request, given the absence of a right to damages, a declaration that the agreement is unenforceable."

BRM argues the Debtors waived any right to declaratory relief because they failed specifically to demand such relief in their complaint. As a result of this purported waiver, BRM contends that when the bankruptcy court construed the complaint to include an implicit request for declaratory relief that the second post-discharge agreement was unenforceable, the court improperly amended the complaint to include an unpleaded demand for

relief. This argument is not persuasive for several reasons.

First, BRM itself filed a counterclaim in this action in which it contended the second post-discharge agreement was an enforceable contract and asked the bankruptcy court for a declaration to that effect.

Next, Debtors' failure to request declaratory relief specifically did not "waive" their right to such relief. Federal Rule of Civil Procedure 8(a)(3)[7] requires pleadings that set forth a claim for relief to include a demand for judgment for the relief the pleader seeks. This rule, however, must be read in conjunction with Federal Rule of Civil Procedure 8(f), which requires courts to construe pleadings "to do substantial justice." *Id.* The purpose of Rule 8(f) "is to facilitate a decision on the merits, and to give notice to the adversary of the nature or basis of the claim brought against him and the general type of litigation involved." *First City Bank v. Blewett (In re Blewett)*, 14 B.R. 840, 841–42 (9th Cir. BAP 1981). "A pleading . . . is to be judged by its substance rather than by its form or label." *Id.* at 842 (citing 5 Wright & Miller, *Federal Practice & Procedure*, § 1286, p. 383). Here, the bankruptcy court did not abuse its discretion in finding an implicit request for declaratory relief as to the validity of the second post-discharge agreement within Debtors' express request for monetary damages for violation of the discharge injunction.

Finally, BRM implicitly consented to trying the issue as amended by the court. Federal Rule of Civil Procedure 15(b)[8] provides that issues actually tried by the express or implied consent of the parties are treated in all respects as if they had

7. Federal Rule of Civil Procedure 8(a)(3) is made applicable to the underlying adversary proceeding by Federal Rule of Bankruptcy Procedure 7008(a).

8. Federal Rule of Civil Procedure 15(b) is made applicable to the underlying adversary proceeding by Federal Rule of Bankruptcy Procedure 7015.

been raised in the pleadings, even if the parties have failed formally to amend the pleadings.[9] *Consol. Data Terminals v. Applied Digital Data Sys., Inc.,* 708 F.2d 385, 396 (9th Cir.1983); *see also Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1522 (9th Cir.1985) ("[i]f an amendment should have been made, we will presume that it has been made"). The Court of Appeals for the Ninth Circuit has also noted in dicta that pleadings are deemed amended if the court enters findings on the unpleaded issue. *Galindo v. Stoody Co.,* 793 F.2d 1502, 1513 n. 8 (9th Cir.1986). If the bankruptcy court in fact amended the pleadings pursuant to Rule 15(b), its decision is reviewed for an abuse of discretion. *Davis & Cox,* 751 F.2d at 1522.

The complaint did not specifically request declaratory relief. Nor did the answer to BRM's counterclaim raise mistake as a defense. Debtors never amended their complaint. Nonetheless, there is no evidence in the record that BRM ever objected to the court's interpretation of the pleadings. On the contrary, BRM actively engaged the claim as framed by the bankruptcy court both in its pre-trial brief and at trial. In addition, BRM was not prejudiced by the court's construction. *See Consolidated Data,* 708 F.2d at 396 (finding late pleading amendments are improper if they cause "substantial prejudice to the opposing party"). It appears BRM understood the Debtors' request for declaratory relief was before the court. It clearly understood that its own request was as well.

BRM should also have understood that as the bankruptcy court framed the issue

for trial, mistake was a potential defense and rescission a potential remedy. In its Memorandum Decision, the court explained that the court was unable to discern what type of agreement Debtors had entered into. Only after the court determined the nature of the agreement could it consider possible defenses and remedies, including mistake and rescission.

The bankruptcy court, therefore, did not abuse its discretion by dealing with the declaratory relief issue.

C. *Debtors' request for a declaration that the second post-discharge agreement was invalid did not constitute an impermissible private right of action to remedy BRM's discharge injunction violation.*

 BRM next argues the Debtors' claim, even when limited to a request for a declaration that the second post-discharge agreement was invalid, constituted an impermissible private right of action to remedy BRM's alleged violation of the discharge injunction. BRM contends that if the bankruptcy court had not improperly permitted Debtors to prosecute this private right of action, the complaint would have been dismissed. BRM's argument is without merit.

During the pendency of this appeal, the Ninth Circuit held that no private right of action for damages exists for violation of the discharge injunction. *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 509 (9th Cir.2002). This ruling is in accord with this panel's prior ruling in *Bassett v. Am. Gen. Fin., Inc. (In re Bassett),* 255 B.R.

---

9. The rule provides, in relevant part:
 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to

the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.*
Fed.R.Civ.P. 15(b) (emphasis supplied).

747, 755–57 (9th Cir. BAP 2000), the decision relied upon by the bankruptcy court in this case. However, we did not decide *Bassett* until November 17, 2000. The complaint in this case was filed on December 3, 1999, almost a full year earlier. In *Bassett*, we specifically noted a split of authority existed as to whether a debtor could assert a private right of action for violation of section 524. *Bassett*, 255 B.R. at 754. A majority of decisions at the time held that section 524 did not create a private right of action. Nevertheless, a minority of decisions, including at least one published decision from the Eastern District of California (the same jurisdiction where this case originated), recognized an implied private right of action under section 524. *Bassett* 255 B.R. at 754, (citing *Malone v. Norwest Fin. Cal. Inc.*, 245 B.R. 389, 395–98 (E.D.Cal.2000)) (other citations omitted).

Under these circumstances, it was neither unreasonable nor improper for Debtors to allege BRM violated the discharge injunction or to request ordinary and punitive damages in their complaint. The Ninth Circuit's decision in *Walls* and our decision in *Bassett*, however, foreclosed Debtors' right to pursue a private right of action for damages. As a result, the bankruptcy court properly granted BRM's motion for summary judgment to the extent the complaint constituted a claim for damages for violation of the discharge injunction.

*Walls*, however, did not leave Debtors without any rights against BRM. The Ninth Circuit noted that civil contempt proceedings are the appropriate means to remedy discharge injunction violations. *Walls*, 276 F.3d at 509. *See also, Bassett*, 255 B.R. at 757 (finding bankruptcy courts retain "broad discretion" to fashion a remedy for violation of the discharge injunction through their contempt powers).

While the bankruptcy court could have required Debtors to amend their complaint, it certainly did not abuse its discretion when it instead narrowed the relief available to Debtors to a declaration that the second post-discharge agreement was unenforceable and simply proceeded to trial on this basis. It also appears that BRM did not object to the court's construction of the complaint after the summary judgment ruling and prior to trial, and therefore implicitly consented to try the issue as framed by the bankruptcy court. Fed. R.Civ.P. 15(b); *Consolidated Data*, 708 F.2d at 396.

D. *The bankruptcy court properly determined Debtors were entitled to rescind the second post-discharge agreement.*

1. *Debtors' failure to plead mistake or rescission in their complaint or their answer did not preclude the bankruptcy court from rescinding the agreement.*

■ BRM points out that Debtors never plead a claim or defense founded on "mistake of law" and never demanded a judgment for rescission. BRM contends that the bankruptcy court somehow "prejudiced" it when it purportedly "pulled" the defense of mistake and remedy of rescission "out of thin air after trial." It appears that BRM contends the bankruptcy court lacked the authority to base its ruling on mistake or grant the remedy of rescission because the Debtors' failure to plead mistake as an affirmative defense or with particularity as required by Federal Rule of Civil Procedure 9(b) waived the defense.

BRM's argument is not supported by the record. The bankruptcy court did not "pull the issue out of thin air after trial." Instead, it appears the court merely applied a different analysis than the parties

suggested or anticipated. At the summary judgment stage, the court noted genuine disputes of material fact existed as to the type and validity of the second post-discharge agreement. The court had interpreted the Debtors' complaint to include a request for a declaration that the agreement was invalid. BRM's counterclaim contended, *inter alia*, that the agreement was an enforceable contract that the Debtors had breached. The whole point of the trial was to settle the disputed factual issues in order to determine the nature of the agreement. Only after reviewing the testimony and other evidence submitted at trial was the bankruptcy court in a position to decide the parties had not formed a new contract and that the agreement was voidable under California law.

2. *The bankruptcy court's finding that statements of BRM's employee induced Debtors to sign the second post-discharge agreement was not clearly erroneous.*

BRM next attacks the bankruptcy court's factual finding that BRM's employee's statements induced the Debtors to sign the second post-discharge agreement. According to BRM, the bankruptcy court "abused its discretion" by twisting facts to transform BRM's "reasonable offer to contract or surrender into a false, fraudulent and oppressive demand." Building on this allegedly mistaken factual finding, BRM argues the bankruptcy court erred when it determined Debtors made a mistake of law pursuant to California Civil Code section 1578. According to BRM, no misapprehension existed because Debtors believed they did not have to sign the second post-discharge agreement at the time they signed it.

To support its argument, BRM points to what it perceives to be a conflict between statements in Mr. Lopez's deposition testimony and his trial testimony. In his deposition, BRM's counsel asked Mr. Lopez whether, at the time he signed the second post-discharge agreement, the following statement was true: "Promisors (sic) understand that they are not required to sign this agreement." Mr. Lopez responded "At the time I signed it, yes." In his alternate direct testimony, Mr. Lopez indicated that after he received a copy of the second post-discharge agreement, he "received a call from a person from Bankruptcy Receivables Management [who] stated that [he] had to sign the document that they had sent to us and return it immediately." At trial, Mr. Lopez testified that:

> The lady called from BRM and said, "Did you receive a contract? You need to sign it and send it back. So we did so."

BRM's counsel did not cross-examine Mr. Lopez on this point.

BRM further contends that the bankruptcy court disregarded certain evidence, including (1) Debtors' Chapter 7 Statement of Intentions in which they elected to "retain and reaffirm"; (2) the September 1998 letter from BRM to Debtors' counsel; and (3) the February 1999 letter from BRM to Debtors' former counsel.

The court's finding that BRM's employee's statements induced Debtors to sign the second post-discharge agreement is a finding of fact which shall not be set aside unless it is clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witness. Fed.R.Civ.P. 52(a);[10] *Amadeo v. Zant,* 486 U.S. 214, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988); *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105

**10.** Federal Rule of Civil Procedure 52(a) is made applicable to the underlying adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.

S.Ct. 1504, 84 L.Ed.2d 518 (1985). "'A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson,* 470 U.S. at 573, 105 S.Ct. 1504 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

The bankruptcy court's finding was not clearly erroneous. In reaching its decision, the bankruptcy court evaluated the correspondence cited by BRM, Vinciguerra's declaration, and the credibility of the witnesses, including Debtors. The court specifically found Vinciguerra's declaration and BRM's version of events was not credible. Instead, the court believed Debtors' testimony. It was certainly not unreasonable, let alone "clearly erroneous," for the court to conclude that Vinciguerra induced Debtors to sign the second post-discharge agreement. Indeed, where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson,* 470 U.S. at 574, 105 S.Ct. 1504.

3. *The bankruptcy court did not err when it determined that Debtors were entitled to rescind the second post-discharge agreement pursuant to California Civil Code §§ 1689 and 1691.*

Finally, BRM contends the Debtors failed to give them notice of rescission or offer to return the jewelry in accordance with the procedures provided in California Civil Code section 1691.[11] As a result, BRM argues the bankruptcy court erred when it rescinded the second post-discharge agreement. Section 1691 provides that subject to California Civil Code section 1693,[12] a party aware of his right to rescind a contract must promptly do two things upon discovering the facts entitling him to rescind. He must (1) give notice to the other party and (2) depending on the circumstances, either restore or offer to restore to the other party everything of value he received under the contract.

There is no evidence in the record that Debtors were aware they had a right to rescind the second post-discharge agreement until they consulted with their current attorney, reopened their bankruptcy case and filed the complaint. The record

11. California Civil Code § 1691 provides:

Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:
(a) Give notice of rescission to the party as to whom he rescinds; and
(b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so.
When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a

pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both.

12. California Civil Code § 1693 provides:

When relief based upon rescission is claimed in an action or proceeding, such relief shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party.
A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party . . . .

---

does, however, contain uncontradicted evidence that Debtors offered to return the jewelry to BRM before they initiated legal action against BRM. In her deposition, Ms. Lopez stated that she offered to return the jewelry to BRM "five or six months" after she and her husband signed the second post-discharge agreement because they "would have a hard time making the payments." At trial, Ms. Lopez testified that at some point she and her husband stopped making payments and attempted to return the jewelry to BRM. She testified that she called and spoke with a BRM representative and was told that "it was too late [to return the jewelry]" because Debtors had already "signed the document." BRM's counsel did not cross-examine Ms. Lopez. Nor does the record reflect that he offered any evidence to contradict her testimony.

Under the circumstances, Ms. Lopez's offer to stop making payments and to return the jewelry satisfied both the requirement that Debtors give notice of their intent to rescind the second post-discharge agreement and the requirement that they offer to restore everything of value under the contract. Therefore, Debtors were entitled to rescind the agreement under California law.

## V.

### CONCLUSION

For the foregoing reasons, the panel determines that the second post-discharge agreement violated section 524 and was therefore invalid and unenforceable. The panel also determines that the bankruptcy court did not err in determining that the complaint contained an implicit cause of action for declaratory relief or that BRM consented to trying the issue as amended by the bankruptcy court by filing its counterclaim and by failing to object to the bankruptcy court's interpretation of the complaint. The panel concludes that Debtors' request for a declaration that the second post-discharge agreement was invalid did not constitute an impermissible private right of action to remedy BRM's discharge injunction violation. Finally, the panel further concludes that Debtors were entitled to rescind the agreement pursuant to California Civil Code sections 1689 and 1691. Accordingly, the bankruptcy court's rulings are AFFIRMED.