OPINION
 

 HUG, JR., Circuit Judge:
 

 This case addresses the question of whether a creditor may enforce a post-bankruptcy discharge agreement entered into with a debtor retaining the collateral pursuant to its rights under
 
 McClellan Fed. Credit Union v. Parker (In re Parker),
 
 139 F.3d 668 (9th Cir.1998). Creditor Bankruptcy Receivables Management (“BRM”) seeks to enforce such an agreement on the grounds that it offered the debtors, Charles and Julia Lopez, new consideration in the form of waiving its right of replevin. The Bankruptcy Appellate Panel (“BAP”) held that the agreement was an invalid reaffirmation agreement pursuant to Bankruptcy Code 11 U.S.C. § 524 because the consideration was based in part on the Lopezes’ discharged debt. The BAP also rescinded the agreement under California law as having been executed under mistake of law. BRM appeals.
 

 I
 

 Charles and Julia Lopez bought a diamond ring and jewelry. The seller, Samu-els Jewelers, Inc., financed the purchase of $5,623.01 and took a security interest in the jewelry.
 

 Thereafter, the Lopezes filed a Chapter 7 bankruptcy petition. The Lopezes stated their intention to reaffirm their debt to Samuels. During the pendency of the case, Samuels assigned its rights in the jewelry to BRM. BRM subsequently sent a reaffirmation agreement to the Lopezes’ attorney, who forwarded the proposed reaffirmation agreement to the Lopezes and counseled against reaffirmation. The Lo-pezes did not execute the reaffirmation agreement.
 

 After the Lopezes received their bankruptcy discharge, Shannon Vinciguerra, a legal assistant employed by BRM, sent a letter to the Lopezes’ attorney, American Law Center. The letter demanded the return of the jewelry, or alternatively, offered the Lopezes the option of retaining the jewelry if they paid a lump sum redemption or executed a post-discharge retention agreement. The agreement accompanied the letter. The terms of the retention agreement provided that the Lo-pezes could retain the jewelry if they paid the remaining balance of the debt in monthly installments with interest. Vinci-guerra’s letter warned that if counsel did not respond within 10 days, BRM would assume that it was no longer representing the Lopezes.
 

 American Law Center was no longer representing the Lopezes. Counsel claims
 
 *704
 
 to have forwarded the letter to the Lo-pezes, but they claim to have never received the letter. The bankruptcy court found that the Lopezes never received the letter from American Law Center.
 

 BRM next contacted the Lopezes directly. It sent the Lopezes a second post-discharge agreement, providing that BRM would forbear from repossessing the jewelry if the Lopezes would agree to make payments to BRM. The terms of the agreement mirrored the original contract. Under the agreement, the Lopezes would be obligated to pay the entire remaining contract debt, totaling $3030.35, plus interest at the contract rate of 22.8% per an-num, payable in $100 monthly installments.
 

 Vinciguerra telephoned the Lopezes concerning the second agreement. The bankruptcy court found that Vinciguerra or another agent of BRM told Mr. Lopez that he and his wife were required to sign the second agreement and return it to BRM immediately. The court also found that Vinciguerra did not discuss any other options with Mr. Lopez, did not explain that he had the right to simply return the jewelry, did not explain the terms of the second agreement, and did not suggest that they seek the advice of counsel.
 

 The Lopezes signed the second agreement, altered the terms by reducing the monthly payment from $100 to $85, and returned it to BRM. They made one payment to BRM of $85. They also submitted a payment of $170, but stopped payment on the check before it was presented for payment by BRM. The bankruptcy court found that the Lopezes attempted to return the jewelry but BRM would not accept it.
 

 BRM threatened to sue the Lopezes. In response, they reopened their bankruptcy ease and filed a complaint against BRM. The original complaint included causes of action for violation of the discharge injunction, fraud, undue influence, and malice. BRM filed a counterclaim for breach of the second agreement, seeking declaratory relief, attorney’s fees, and conversion. BRM asserted the second agreement was a valid contract, and that the Lopezes breached by failing to make payments.
 

 BRM moved for summary judgment, which the bankruptcy court granted in part and denied in part. The court agreed that the Lopezes had no private right of action for damages arising from a violation of the discharge injunction. The court found, however, implicit in the Lopezes’ claim for declaratory relief and damages, a request holding that the second agreement was an unenforceable reaffirmation agreement. The court also construed the complaint to include a request that the agreement was unenforceable.
 

 The bankruptcy court ruled in its summary judgment order that the second agreement was not a valid reaffirmation agreement because it was not made before the court entered the Lopezes’ discharge, as required by 11 U.S.C. § 524(c). It further concluded that the second agreement was not a valid redemption agreement pursuant to 11 U.S.C. § 722 because it was not approved by the court in accordance with Rule 6008 of the Federal Rules of Bankruptcy Procedure. The court indicated the agreement might be a valid post-petition agreement supported by new consideration, but found that a genuine issue of material fact existed as to whether BRM gave the Lopezes adequate consideration for the new contract.
 

 After conducting a trial, the bankruptcy court ruled that BRM and the Lopezes did not form a new contract because the Lo-pezes were under the misapprehension that they had no alternative but to execute the second agreement. The court concluded that, pursuant to California law, the
 
 *705
 
 Lopezes did not freely consent, and such a mistake of law warranted rescission of the agreement.
 

 Alternatively, the court held that the agreement was invalid because it was not supported by new consideration. Relying upon
 
 Parker,
 
 the court ruled that the Lo-pezes had the right to retain the jewelry and continue making payments without reaffirming the original contract. BRM’s forbearance from foreclosing on the jewelry merely acquiesced to what
 
 Parker
 
 already allows — namely the debtor may retain the jewelry and keep current its payments pursuant to the original contract, and the creditor retains the right to foreclose should the debtor default. The reduction of the monthly installment by $15 was too insignificant to suffice as additional consideration.
 

 The court rescinded the agreement, ordered BRM to refund the $85 payment to the Lopezes, and ordered the Lopezes to return the jewelry to BRM (or more appropriately, ordered BRM to accept the jewelry from them, something the Lopezes wished to do before the action commenced).
 

 A Ninth Circuit Bankruptcy Appellate Panel (“BAP”) affirmed.
 
 Bankruptcy Receivables Mgmt. v. Lopez (In re Lopez),
 
 274 B.R. 854, 856 (9th Cir.BAP2002). The BAP held that the agreement was an invalid reaffirmation agreement for its failure to comply with § 524(c).
 
 Id.
 
 at 860.
 

 Next, the BAP held that the bankruptcy court did not err when it determined that the Lopezes’ complaint contained an implicit cause of action for declaratory relief.
 
 Id.
 
 at 862. BRM raised the validity of the agreement in its counterclaim, seeking a declaration that the contract was enforceable.
 
 Id.
 
 Also, the Lopezes’ failure to expressly request declaratory relief did not constitute a waiver because Federal Rule of Civil Procedure 8(f) requires courts to construe pleadings “to do substantial justice,” and BRM had notice from the complaint that the validity of the agreement was disputed.
 
 Id.
 
 Finally, BRM consented to trying the issue as amended by the bankruptcy court’s post-summary judgment under Federal Rule of Civil Procedure Rule 15(b), providing that the issues tried by the express or implied consent of the parties are to be treated as if they had been raised in the pleadings.
 
 Id.
 
 at 862-63.
 

 Finally, the BAP held that the bankruptcy court properly determined that the Lopezes were entitled to rescind the agreement.
 
 Id.
 
 at 864. The Lopezes’ failure to plead mistake or request recision did not preclude the relief because the sole issue of the trial, raised by both BRM and the Lopezes, was the validity of the contract.
 
 Id.
 
 at 865. The court did not clearly err in finding that BRM improperly induced the Lopezes into signing the agreement.
 
 Id.
 
 at 866. The court also properly applied California Civil Code § 1691 because the Lopezes’ offer to stop making payments and return the jewelry satisfied the notice and restore requirements of § 1691.
 
 Id.
 
 at 867.
 

 Jurisdiction before this court is proper under 28 U.S.C. § 158(d).
 

 II
 

 Decisions of the BAP are reviewed de novo.
 
 Carillo v. Su (In re Su),
 
 290 F.3d 1140, 1142 (9th Cir.2002). This court reviews the bankruptcy court’s conclusions of law de novo and its findings of fact for clear error.
 
 Eskanos & Adler, P.C. v. Leetien,
 
 309 F.3d 1210, 1213 (9th Cir.2002). The bankruptcy court’s choice of remedies is reviewed for an abuse of discretion.
 
 Stone v. San Francisco,
 
 968 F.2d 850, 861 (9th Cir.1992).
 

 III
 

 We address two issues on appeal. The first is whether the bankruptcy court im-
 
 *706
 
 permissibly construed the complaint to include a cause of action for declaratory relief. The second issue is whether a post-discharge agreement to pay a discharged debt must comply with Bankruptcy Code §§ 524(c) and (d)’s procedural requirements for reaffirmation agreements, or whether parties may contract around § 524 even though the consideration is based in whole or in part on a discharged debt in addition to new consideration. The BAP adopted a bright-line rule that any agreement whose consideration is based in whole or in part on a discharged debt is only enforceable if it complies with § 524.
 
 Lopez,
 
 274 B.R. at 860. The $3030.35 question in this case is even though the agreement is not a valid reaffirmation agreement under § 524, is it nevertheless a valid contract?
 

 A. The Bankruptcy Court Did Not Err in Granting Declaratory Relief to the Lopezes.
 

 The validity of the contract is the central claim of both parties. The bankruptcy court did not abuse its discretion in construing the pleadings to obtain substantial justice. Fed.R.Civ.P. 8(f). The Lopezes had standing to seek relief from the bankruptcy court through a contempt proceeding.
 
 Walls v. Wells Fargo Bank N. A.,
 
 276 F.3d 502, 507 (9th Cir.2002). Finally, BRM consented to trying the issue of the validity of the agreement as construed by the bankruptcy court. Fed.R.Civ.P. 15(b);
 
 see also Consolidated Data Terminals v. Applied Digital Data Sys.,
 
 708 F.2d 385, 396 (9th Cir.1983).
 

 B. The Contract Is An Invalid Reaffirmation Agreement.
 

 1.
 
 Parker
 
 Applies And Is Binding Precedent.
 

 BRM posits that this post-discharge freedom of contract issue could be avoided if this court were to reverse this circuit’s prior decision,
 
 In re Parker.
 
 BRM claims that
 
 Parker
 
 misconstrues Bankruptcy Code § 521(2) by permitting debtors to retain the collateral and keep current their payments pursuant to the original contract.
 

 In
 
 Parker,
 
 this court considered whether a bankruptcy court erred in refusing to approve an affirmation agreement between an unrepresented debtor and a credit union concerning a secured debt on his automobile. 139 F.3d at 670. The court considered a debtor’s options under § 521(2) of the Bankruptcy Code.
 
 Id.
 
 at 672. Section 521(2)(A) states that after filing a Chapter 7 petition, a debtor with consumer debts secured by property of the estate shall file a statement of its intention to retain or surrender the property, and “if applicable,” specify whether the debtor claims the property as exempt, plans to redeem the property, or intends to reaffirm the debt.
 
 Id.
 

 The court held that a debtor could retain the secured property and keep its payments current without reaffirmation of the debt.
 
 Id.
 
 at 673. The only mandatory act required by debtors under § 521(2) is filing a statement of intention if a debtor elects to redeem, reaffirm, or claim the property as exempt.
 
 Id.
 
 Section 521(2)(C) kept a debtor’s options available, including the right to forego entirely the affirmation or redemption options under §§ 521(2)(A) and (B).
 
 Id.
 

 BRM contends that absent
 
 Parker’s
 
 retain and keep current option, debtors wishing to retain the property would be required by § 521(2) to reaffirm the debt during the course of the bankruptcy proceeding. BRM further asserts the analysis is fundamentally flawed and has been called into question by the First Circuit in
 
 *707
 

 Bank of Boston v. Burr (In re Burr),
 
 160 F.3d 843, 847-48 (1st Cir.1998).
 

 In
 
 Parker,
 
 we noted that the circuits were evenly split on whether redemption or reaffirmation were a debtor’s only alternatives, or whether a debtor may retain the property and continue making payments without electing to reaffirm the debt. 139 F.3d at 672. This disagreement among the circuits regarding the proper construction of § 521(2)(A) continues to exist. Some have held that debtors may only reaffirm the debt, redeem the property, or retain through an exemption pursuant to 11 U.S.C. § 521(2).
 
 See Burr,
 
 160 F.3d at 847-48;
 
 Johnson v. Sun Fin. Co. (In re Johnson),
 
 89 F.3d 249, 251-52 (5th Cir.1996) (per curiam);
 
 In re Edwards,
 
 901 F.2d 1383, 1385-87 (7th Cir.1990); and
 
 Taylor v. AGE Fed. Credit Union (In re Taylor),
 
 3 F.3d 1512, 1516-17 (11th Cir.1993).
 

 Other circuits follow the Ninth’s approach, holding that debtors are not limited to these three options from § 521(2)(A), but may also retain the collateral so long as they keep the payments current under the original contract.
 
 See Parker,
 
 139 F.3d at 673;
 
 Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow),
 
 126 F.3d 43, 53 (2d Cir.1997);
 
 Home Owners Funding Corp. of Amer. v. Belanger (In re Belanger),
 
 962 F.2d 345, 347-48 (4th Cir.1992);
 
 Lowry Fed. Credit Union v. West,
 
 882 F.2d 1543, 1546-47 (10th Cir.1989). The leading bankruptcy treatise has also endorsed the reasoning of
 
 Parker. 4 Collier on Bankruptcy,
 
 ¶ 521.10 (15th ed. rev.2003).
 

 a general rule, a three-judge panel of this court cannot reconsider or overrule the decision of a prior panel.
 
 United States v. Gay,
 
 967 F.2d 322, 327 (9th Cir.1992). The reasoning or theory of
 
 Parker
 
 is not clearly irreconcilable with the reasoning or theory of an intervening higher authority to justify reconsideration or overruling.
 
 Miller v. Gammie,
 
 335 F.3d 889, 2003 WL 21540416 (9th Cir. July 9, 2003)2003 U.S.App. Lexis 13720, at *3 (en banc);
 
 see also Gay,
 
 967 F.2d at 327. Despite BRM’s dedicating much of its argument to
 
 Parker,
 
 this issue is not appropriate for reconsideration.
 

 [6] Lopezes were entitled under
 
 Parker
 
 to retain the jewelry so long as they continued to make their payments. 139 F.3d at 673. BRM retained, pursuant to
 
 Parker,
 
 the right to repossess the jewel-jewelshould the Lopezes breach.
 
 Id.
 
 at 671. BRM could not, however, hold the Lopezes personally liable for any difference be-bethe debt and the value of the collat-collatThat personal liability had been dis-disin the bankruptcy proceeding. Despite the Lopezes’ decimation from en-eninto a pre-discharge reaffirmation, BRM nevertheless attempted to enter into a contract with the Lopezes post-discharge in order to reimpose personal liability.
 

 2. The Lopezes Were Entitled To The Protections Of § 524(c) Of The Bankruptcy Code Because The New Agreement Was Based “In Part” On The Discharged Debt.
 

 [7] the new agreement was based at least “in part” on the discharged debt, § 524(c) of the Bankruptcy Code ap-applies.
 
 [1]
 
 purpose of this agreement was essentially to reaffirm the debt and to re
 
 *708
 
 impose personal liability. The Lopezes had no obligation to BRM discernible in the post-discharge agreement without reference to the pre-petition loan. The consideration for the agreement was predicated in part (if not predominantly) on the discharged debt. The loan amount is identical to the pre-discharged debt. The terms, including the 22.8% interest rate, are also identical. The only difference in consideration was the reduction in monthly payments from $100 to $85, and the resulting extension of the duration of repayment. This new change, however, does not remove the contract from the protections of § 524(c). Because the consideration is based “in part” on the discharged debt, the agreement must comply with the procedural requirements of § 524(c) of the Bankruptcy Code.
 

 This analysis also accords with Ninth Circuit precedent adopting a broad construction of the consumer protection afforded in §§ 524(c) and (d).
 
 Renwick v. Bennett (In re Bennett),
 
 298 F.3d 1059, 1067-68 (9th Cir.2002). In
 
 Bennett,
 
 former law partners sued each other over the proper interpretation of a post-discharge settlement agreement, where the parties agreed to pay a debt discharged in bankruptcy in exchange for a release of one partner’s claims against the other.
 
 Id.
 
 at 1063. The court observed that Congress amended the Bankruptcy Code in 1978 by adding §§ 524(c) and (d) to address the problem of post-bankruptcy attempts to enforce pre-bankruptcy obligations in non-bankruptcy forums using non-bankruptcy law.
 
 Id.
 
 at 1066. The court held that a post-petition agreement to repay a discharged debt is not a valid reaffirmation agreement under § 524(c) if the consideration offered by the debtor is the repayment of the discharged debt.
 
 Id.
 
 at 1067.
 
 *709
 
 Since the consideration for the release was repayment of the discharged debt, the agreement amounted to an attempted reaffirmation.
 
 Id.
 
 The fact that one partner allegedly offered new consideration was inconsequential.
 
 Id.
 
 Consequently, the contract claim was barred under § 524(a).
 
 Id.
 
 at 1068.
 

 BRM seeks to distinguish
 
 Bennett,
 
 which involved an unsecured debt, by arguing that the consideration here was not based “in part” on the discharged debt, but rather on BRM’s
 
 in rem
 
 rights in the collateral. The same might be said of every secured reaffirmation agreement. Any creditor could claim
 
 in rem
 
 rights in the collateralization and thereby vitiate the protections of § 524(c).
 

 Finally, the present situation differs from
 
 Watson v. Shandell (In re Watson),
 
 192 B.R. 789, 748 (9th Cir.BAP1996), where the BAP expressly found that the debt was not based “in whole or in part” on a discharged debt. There, a seller successfully sued in state court to collect on a pre-petition debt over defaulted promissory notes relating to the purchase of a physical therapy business.
 
 Id.
 
 at 742.
 
 [2]
 
 The debtor then filed a Chapter 7 bankruptcy petition.
 
 Id.
 
 The bankruptcy court granted the seller relief from the automatic stay to pursue the state court action and collect the accounts receivable.
 
 Id.
 
 The parties settled the state court action, agreeing that the seller would dismiss the state action in exchange for the debtor’s relinquishing to the seller his interests in the pre-petition accounts held by the trustee, as well as turning over all pre-petition accounts receivable.
 
 Id.
 
 The seller filed a second state court action after the debtor failed to turn over the accounts receivable.
 
 Id.
 
 The state court entered judgment in favor of the seller.
 
 Id.
 
 The debtor then sought to reopen his bankruptcy case, asserting that the state court award was barred under § 524(c) as an attempt to collect on a discharged debt and failed to satisfy § 524(c)’s requirements for reaffirmation agreements.
 
 Id.
 
 at 744. The BAP sustained the bankruptcy court’s denial of the motion to reopen, concluding that because the first state proceedings were allowed to proceed, the debtor’s agreement was not a reaffirmation of the debt on the original note. Instead, the BAP found that the agreement “concerned his obligation to provide collateral that had been released from the automatic stay.”
 
 Id.
 
 at 748. Thus the settlement agreement did not constitute an improper reaffirmation agreement. By contrast, the post-discharge agreement here is based at least “in part” on the discharged debt. There was no finding that the agreement was based on any similar “obligation to provide collateral that had been released from the automatic stay.”
 

 3. BRM Did Not Comport With § 524(c).
 

 BRM’s attempt to reaffirm the debt does not comport with § 524(c) of the Bankruptcy Code. The agreement was entered after the discharge of the debt, contrary to § 524(c)(1), and was not filed with the court and reviewed by Lopezes’ counsel, contrary to § 524(c)(3). This agreement cannot be a valid reaffirmation agreement.
 

 This conclusion is supported by other provisions of the Bankruptcy Code. Subject to certain exceptions, § 727 of the Bankruptcy Code discharges a debtor from all debts that arise before the date of the order for relief.
 
 Lompa v. Price (In re Price),
 
 871 F.2d 97, 98 (9th Cir.1989).
 
 *710
 
 Section 524(a) permanently enjoins all creditor actions to collect debts discharged under § 727.
 
 Lopez,
 
 274 B.R. at 860. A debtor may voluntarily make payments on a discharged debt under § 524(f), or enter into a new agreement with a creditor so long as the creditor complies with §§ 524(c) and (d)
 
 [3]
 
 .
 
 Id.
 

 IV
 

 BRM attempts to reassert personal liability on the Lopezes for a debt that has been discharged in bankruptcy. BRM’s supposed consideration, forbearing its foreclosure right in exchange for the repayment of the discharged debt, is hardly additional consideration because under
 
 Parker
 
 the Lopezes were entitled to retain the jewelry and continue to make payments. Whether or not the decrease in the amount of the monthly payments and the lengthier duration of the payment period constituted consideration is, in any case, “of no consequence.”
 
 Bennett,
 
 298 F.3d at 1067 (“a post-petition agreement to repay a discharged debt is not a valid affirmation agreement” even where debtor offered additional consideration) (citing
 
 Republic Bank of Cal. v. Getzoff (In re Getzoff),
 
 180 B.R. 572, 574-75 (9th Cir.BAP1995)). Because the agreement here is based “in part” on a discharged debt, it triggers scrutiny pursuant to § 524. The agreement was not “made before the granting of the discharge,” pursuant to § 524(c), and therefore is unenforceable, with or without new consideration.
 

 We have recognized that Congress adopted §§ 524(c) and (d) to address the problem, such as the one posed here, of post-discharge attempts to enforce prebankruptcy obligations in non-bankruptcy forums using non-bankruptcy law.
 
 Bennett,
 
 298 F.3d at 1066. As the BAP noted: “If Congress wanted foxes guarding the henhouse, it would not have incorporated section 524(c) into the Bankruptcy Code.”
 
 Lopez,
 
 274 B.R. at 862.
 

 The risk of the asset’s depreciating does not override the mandates of the Bankruptcy Code. Just as the credit union in
 
 Parker
 
 faced the risk of a depreciating automobile, so too does BRM face this risk with respect to the jewelry. This is the uncertainty creditors face with all installment loans.
 
 See Belanger,
 
 962 F.2d at 349 (stating that in installment loan circumstances, “the principal disadvantage to the creditor is the possibility that the value of the collateral will be less than the balance due on the secured debt. But this is a risk in all installment loans, and presumably the creditor has structured repayment to accommodate it”). The risk against recovering any deficiency in the loan amount post-discharge is the same had the property been redeemed through the course of the bankruptcy proceedings.
 
 See id.
 

 Because the agreement is invalid under federal bankruptcy law, there is no need to review the agreement pursuant to California contract law.
 

 The bankruptcy court did not abuse its discretion in rescinding the contract, ordering the Lopezes to return the jewelry to BRM, and requiring BRM to refund the Lopezes’ $85.
 

 The ruling of the bankruptcy court is AFFIRMED.
 

 [1]
 

 . Section 524(c) provides:
 

 An agreement between a holder of a claim and the debtor,
 
 the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title
 
 [11 U.S.C. §§ 101 et seq.] is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—
 

 
 *708
 
 (1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
 

 (2) (A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and
 

 (B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;
 

 (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—
 

 (A) such agreement represents a fully informed and voluntary agreement by the debtor;
 

 (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
 

 (C) the attorney fully advised the debtor of the legal effect and consequences of—
 

 (i) an agreement of the kind specified in this subsection; and
 

 (ii) any default under such an agreement;
 

 (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;
 

 (5) the provisions of subsection (d) of this section have been complied with; and
 

 (6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—
 

 (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
 

 (ii) in the best interest of the debtor.
 

 (B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.
 

 11 U.S.C. § 524(c) (2003) (emphasis added).
 

 [2]
 

 . The seller obtained a preliminary injunction in state court, requiring the debtor to provide information about the accounts and surrender proceeds to a trustee.
 
 Id.
 
 at 743.
 

 [3]
 

 . Section 524(d) imposes judicial oversight provisions for parties not represented by counsel.