In re Antoinette DUMONT, Debtor.

Antoinette Dumont, Appellant,

v.

Ford Motor Credit Company, Appellee.

BAP No. SC–07–1155–BaMoD.
Bankruptcy No. 06–00980–JM7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 28, 2007.

Filed Feb. 6, 2008.

---

Michael G. Doan, Doan, Levinson & Liljegren, Carlsbad, CA, for Antoinette Dumont.

Randaall P. Mroczynski, Cosa Mesa, CA, for Ford Motor Credit Company.

Before: BAUM [1], MONTALI and DUNN, Bankruptcy Judges.

BAUM, Bankruptcy Judge:

We must determine if the Ninth Circuit's decision, *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668 (9th Cir.1998), which allowed chapter 7 bankrupt debtors to retain their motor

**1.** Hon. Redfield T. Baum, Sr., Chief Bankruptcy Judge for the District of Arizona, sitting by designation.

vehicles if current on their payments without an enforceable reaffirmation agreement, was effectively overruled by the 2005 amendments to the Bankruptcy Code. We conclude that these amendments effectively overruled *Parker* and its progeny, fundamentally changing the way bankruptcy courts and individual debtors in chapter 7 deal with purchase money secured claims on personal property.

Appellant Antoinette Dumont ("Dumont" or Debtor) appeals the bankruptcy court's decision denying "Debtor's Application for Order to Show Cause for Contempt of Automatic Stay Under 11 U.S.C. § 362; Bankruptcy Discharge Under 11 U.S.C. § 524 and 11 U.S.C. § 105; DRA Provisions of 11 U.S.C. § 526; Other State and Federal Relief; Request for Attorney's Fees and Costs" ("Application"). We **AFFIRM**.

## I. FACTS

The facts are not in dispute. Pre-petition, Dumont entered into a Retail Installment Sale Contract ("Contract") with Ford Motor Credit Company ("Ford") in which Ford provided financing to purchase a 2003 Chevrolet Cavalier ("Car"). The Contract provides that if the Debtor files for bankruptcy protection, a default occurs, and upon such default, Ford may repossess the Car ("ipso facto clause"). On April 30, 2006, Dumont filed a petition for relief under chapter 7 of the Bankruptcy Code.[2] On Schedule B, Debtor valued the Car at $5,800.00; on Schedule D the Debtor listed the amount of Ford's claim as $8,288.00. In her Statement of Intention, Debtor stated "Debtor will retain collateral and continue to make regular pay-

ments." On May 4, 2006, Ford filed a secured proof of claim for $8,126.78 plus interest at the Contract rate. On May 15, 2006, Ford provided a proposed reaffirmation agreement; such agreement was never executed. The meeting of creditors was held on June 9, 2006, and on June 12, 2006, the trustee filed a report of no distribution. On August 15, 2006, Debtor was granted a discharge, and on August 21, 2006, the case was closed. The Debtor made the required Contract payments to Ford postpetition. The record is unclear whether the Debtor ever defaulted in making Contract payments pre-petition. On November 15, 2006, Ford repossessed the Car. On February 2, 2007, Debtor filed the Application. Following a hearing, the Bankruptcy Court, on April 5, 2007, entered its order denying the Application. Dumont timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (O). The Panel has jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

What are the effects of BAPCPA sections 362(h), 521(a)(2) and (6), and 521(d) on *Parker* and the "ride through" option?

## IV. STANDARD OF REVIEW

■ No questions of fact are at issue in this appeal; at issue are the bankruptcy court's legal conclusions regarding application of certain amended and new sections of BAPCPA. We review the bankruptcy court's interpretation of the Bankruptcy Code de novo. *Bankr. Receivables Mgmt.*

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgat-

ed as of October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23.

*v. Lopez (In re Lopez)*, 345 F.3d 701, 705 (9th Cir.2003).

## V. DISCUSSION

### A. The BAPCPA Amendments effectively overruled *Parker* and eliminated the *Parker* "ride through" option

BAPCPA amended sections 521(a)(2) and 362(h) and added new sections 521(a)(6) and 521(d). These changes effectively eliminated the so called fourth option or "ride through" authorized by *Parker*. In *Parker*, the debtor indicated on his statement of intention that his car loan would be reaffirmed. A reaffirmation agreement was filed with the bankruptcy court, which refused to approve the agreement as not in the debtor's best interests. The court concluded that the debtor could keep the car so long as he made the payments, and that reaffirmation was not required. *Parker*, 139 F.3d at 669–70. *Parker* determined that the debtor's options for retaining secured property were not limited to reaffirmation or redemption under former section 521(2). *Id.* at 673. *Parker* also determined that the bankruptcy court was correct in concluding that Parker could retain the car so long as he made the monthly payments even though the reaffirmation agreement was not approved by the bankruptcy court. *Id.* at 672.

### 1. *Section 521(a)(2)*

The BAPCPA amendments to section 521(a)(2) do not by themselves affect the *Parker* decision. Section 521(a)(2) still requires the debtor to both timely file the statement of intention and perform on that stated intention. Section 521(a)(2) [3] now applies to all debts secured by property of the estate (previously it applied only to consumer debts). Section 521(a)(2)(A) (formerly section 521(2)(A)) was not amended by BAPCPA. Section 521(a)(2)(B) (formerly section 521(2)(B)) changed the deadline for the debtor to perform his intention to thirty days after the first date set for the meeting of creditors (previously the debtor had until forty-five days after the filing of the notice of intent). Here, there is no dispute that the debt is of a kind described in section 521(a)(2) and that the Debtor performed her stated intention ("retain collateral and continue to make regular payments") timely.

In holding that a debtor is not required to choose between redemption and reaffirmation, *Parker* determined that the plain meaning of former section 521(2) was unambiguous and that the only mandatory

---

3. Section 521(a)(2) provides:

(a) The debtor shall—
(2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem

such property, or that the debtor intends to reaffirm debts secured by such property.
(B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30 day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h);
. . . .

act was the filing of the statement of intention, then "if applicable" (meaning if the debtor plans to choose one of the three options listed in former section 521(2)(A): surrender; claim as exempt and redeem; or reaffirm) the debtor must specify that intent. *Parker*, 139 F.3d at 673. BAPC-PA retains the exact "if applicable" language. Thus as it relates to section 521(a)(2)(A), the *Parker* analysis and conclusion are unimpaired. However, *Parker*[4] also supported its holding by relying on former section 521(2)(C), which provided that the debtor's property rights are not altered under former section 521(2)(A) and (B). BAPCPA section 521(a)(2)(C) (formerly section 521(2)(C)), now provides an exception, by way of new section 362(h), to the general rule that the debtor's property rights are not altered under section 521(a)(2)(A) and (B).

### 2. *Section 362(h)*

Section 362(h)[5] terminates the section 362(a) stay as to personal property securing a claim, whether purchase money or not (and also abandons that property), if an individual debtor does not timely file his statement of intention under section 521(a)(2) or indicate in the statement that the debtor will either surrender or retain the collateral, and if retaining, either redeem or reaffirm. Section 362(h) also lifts the stay (and abandons the property) if the debtor does not timely perform the action specified in the statement of intention.[6] The language used in section 362(h)(1)(A) regarding what needs to be in the statement of intention is different from that used in section 521(a)(2)(A). Section 362(h)(1) requires a debtor who retains a vehicle to timely specify his intention to reaffirm or redeem and to timely act thereon. Debtor's failure to comply results in the lifting of the section 362(a) stay.

■■■ Here when Ford repossessed the Car, the stay had already expired because Dumont's discharge had been entered. Section 362(c)(2)(C). However, the stay, as to the Car, was lifted prior to Dumont's

---

4. *Parker* provided, "The debtor's other options remain available, as unambiguously stated in § 521(2)(C) . . . ." 139 F.3d at 673.

5. Section 362(h) was added by BAPCPA. It provides:

> (h)(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—
> (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property either redeem such personal prop-

erty pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p)if the trustee does not do so, as applicable; and
> (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

6. Courts interpreting section 362(h)have generally found that a debtor who wishes to retain a vehicle must specify his intention either to reaffirm or redeem on the statement and timely act on that intention or the stay is lifted. *See, e.g., In re Donald*, 343 B.R. 524 (Bankr.E.D.N.C.2006); *In re Steinhaus*, 349 B.R. 694 (Bankr.D.Idaho 2006).

discharge based on section 362(h). Section 362(h) requires a debtor who retains a vehicle to indicate his intent either to reaffirm or redeem. The use of the word "either" [7] limits the choices available to the debtor: "either" surrender or retain the vehicle, and if retaining, "either" redeem or reaffirm. Section 362(h) requires a debtor who retains a vehicle to indicate his intent either to reaffirm or redeem, and if the debtor fails to specify his or her intention or timely take the action specified (both must be done within the time period set by section 521(a)(2)), then the stay lifts. Therefore, when Dumont stated her intent to retain and pay in her statement of intention she did not comply with debtor's obligations under section 362(h) and the stay lifted. [8]

### 3. *Section 521(a)(6)*

Section 521(a)(6) also requires an individual chapter 7 debtor either to reaffirm or redeem personal property securing a purchase money obligation. The section applies when a creditor has an "allowed claim" for the "purchase price." Courts that have interpreted section 521(a)(6) [9] have focused on the meaning and effect of "allowed claim" and "purchase price" and have reached different conclusions regarding their meaning. [10]

Here we need not decide the precise meaning of "has an allowed claim" because Ford filed a proof of claim. That proof of claim is deemed allowed (and thus an "allowed claim") because it was not objected to. 11 U.S.C. § 502(a); Rule 3001(f). Because Ford had an allowed claim it was entitled to the additional creditor rights added by new section 521(a)(6).

■ As a separate issue, the words "allowed claim for the purchase price" would seem to mean the amount paid for the personal property, here the Car. However,

7. Websters's II New College Dictionary (1999) defines "either" as "one or the other."

8. Section 521(d)(not impeding the use of ipso facto clauses) becomes applicable if section 362(h) is not complied with.

9. Section 521(a)(6) was added by BAPCPA. It provides:

(a) The debtor shall—
. . .
(6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either—
 (A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
 (B) redeems such property from the security interest pursuant to section 722.

If the debtor fails to so act within the 45–day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law. . . .

10. *Donald*, 343 B.R. at 535–536 (filing a claim "is a reasonable prerequisite to receiving relief" under § 521(a)(6); purchase price means "full purchase price" and is not the same as a claim secured by a "purchase money security interest"); a different conclusion was reached in *Steinhaus*, 349 B.R. at 705 (concluding the word "allowed" has no clearly intended function when ride through is considered, and concurring with *In re Rowe*, 342 B.R. 341 (Bankr.D.Kan.2006), that the term "allowed" may be disregarded and that the filing of a claim is not required for relief under § 521(a)(6), and concluding that creditors with a purchase money security interest qualify even if their claim is for less than the full purchase price).

as used in section 521(a)(6) the words "purchase price" are essentially synonymous to a purchase money security interest (as stated in BAPCPA's legislative history[11]). Otherwise the section would probably be meaningless and have virtually no application because few automobile lenders finance cars without some form of down payment, and any amount of down payment would reduce the creditor's claim to an amount less than the purchase price.

Further, any payments on the debt however small would reduce the amount of the purchase price and thus deny a creditor the protections of section 521(a)(6). It makes no sense for the statute to work only in favor of a creditor of a debtor who has paid nothing. We agree with *Steinhaus* and *Rowe* and interpret this section to apply to a purchase money security interest regardless of any subsequent partial payment by the debtor. The debtor has forty-five days from the section 341(a) creditors' meeting either to reaffirm or redeem. The consequences of failure to do so are similar to section 362(h) (the lifting of the section 362(a) stay and abandonment) but with the addition of a new creditor right by expressly providing that the

creditor can take whatever action "as permitted by applicable nonbankruptcy law".[12]

### 4. *Section 521(d)*

 New section 521(d) allows ipso facto default clauses to be enforced, notwithstanding other Code restrictions that previously prevented or limited the enforcement of such clauses that placed a debtor in default for filing bankruptcy. Section 521(d)[13] expressly refers to sections 521(a)(6) and 362(h)(1) and (2) so that a debtor who "fails timely to take the action" under those sections no longer has Code protection against an ipso facto default. Where otherwise enforceable, ipso facto default provisions may now be used by creditors to repossess, contrary to the previous Code limitations.[14]

However, there may be other restrictions on such creditor actions. First, when section 521(d) applies, permitting an ipso facto default clause to be effective, the creditor who repossesses must still abide by state law. Some state consumer protection statutes prevent a creditor from repossessing when there is no payment default.[15] These state consumer protection statutes have the potential to make

11. H.R.Rep. No. 109–31, pt.1 at 70–71 (2005)(chapter 7 debtor may not retain possession of personal property securing a purchase money security interest, unless the debtor timely reaffirms or redeems the property).

12. In addition, section 521(d)(not impeding the use of ipso facto clauses) becomes applicable if section 521(a)(6) is not complied with.

13. BAPCPA added section 521(d) which provides:

(d) if the debtor fails timely to take the action specified in subsection (a)(6)of this section, or in paragraphs (1) and (2) of section 362(h), with respect to property ... to which a creditor holds a security interest ... nothing in this title shall prevent or

limit the operation of a provision in the underlying ... agreement that has the effect of placing the debtor in default under such ... agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor. Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.

14. Sections 365(e)and 541(c).

15. *Rowe*, 342 B.R. at 351. (under Kansas law, if a debtor is current on payments, there is no "significant impairment" under the Kansas UCCC. Thus, the effect of BAPCPA in many cases will be illusory); *Steinhaus*, 349 B.R. at 710 (noting that the Idaho statute is virtually identical to the Kansas statute).

the aforementioned BAPCPA provisions meaningless if repossession is barred by state law when a debtor's payments are current.

Second, for a creditor to rely on an ipso facto default clause, section 521(d) must be satisfied (the debtor fails timely to take the action specified in sections 521(a)(6) or 362(h)(1) and (2)). Thus if a debtor is in compliance with sections 521(a)(6) or 362(h)(1) and (2), then section 521(d) has no effect, and enforcing an ipso facto default clause is still barred by the Code.

### 5. *The case law*

■ Perhaps most telling on this issue is the fact that every available bankruptcy court decision[16] has concluded that the fourth option or the "ride through" option was eliminated by these amendments in BAPCPA to the Code. Although these courts have differing interpretations of various parts of these statutes, the unanimous conclusion of all bankruptcy courts is that "ride through" has been eliminated and a debtor intending to retain a motor vehicle or other personal property collateral must either redeem under section 722 or reaffirm the debt in accordance with section 524. For the reasons we have explained, we concur with those decisions.

### 6. *Dumont's failure to perform her debtor requirements under the Code results in Ford's repossession not being in violation of the Code*

Here, Dumont did not fulfill her duties under sections 521 and 362(h) because she failed to indicate in her statement an intent either to reaffirm or redeem, yet still retained the Car. As a result, the stay lifted and the Car was no longer property of the estate. Dumont also failed to fulfill her duties under section 521(a)(6) and, in addition to stay relief and abandonment, Ford was free to take whatever action is allowed under California law. Further, section 521(d) applies such that the Code does not preclude the application of the Contract's ipso facto clause.

Despite the fact that Dumont was current with her payments, Ford utilized the Contract's ipso facto clause and repossessed the Car.[17] Ford repossessed after Dumont received her discharge but could have done so earlier (possibly, as early as thirty days after the first meeting of creditors, as stated in section 521(a)(2)(B)). However, Ford's right to repossess remains subject to state law limitations. *See* 4 Collier on Bankruptcy ¶ 521.10[5], at p. 521–59 (15th ed. rev.2007). The issue now becomes whether it is within the jurisdiction of the bankruptcy court to decide the

---

16. *See, e.g., In re Anderson,* 348 B.R. 652 (Bankr.D.Del.2006); *In re Blakeley,* 363 B.R. 225 (Bankr.D.Utah 2007); *In re Boring,* 346 B.R. 178 (Bankr.N.D.W.Va.2006); *In re Bower,* No. 07–60126–FRA7, 2007 WL 2163472 (Bankr.D.Or. July 26, 2007); *In re Craker,* 337 B.R. 549 (Bankr.M.D.N.C.2006); *In re Donald,* 343 B.R. 524 (Bankr.E.D.N.C.2006); *In re Ertha Rice,* No. 06–10975, 2007 WL 781893 (Bankr.E.D.Pa. Mar.12, 2007); *In re Husain,* 364 B.R. 211 (Bankr.E.D.Va.2007); *In re McFall,* 356 B.R. 674 (Bankr.N.D.Ohio 2006); *In re Moustafi,* 371 B.R. 434 (Bankr.D.Ariz. 2007); *In re Norton,* 347 B.R. 291 (Bankr. E.D.Tenn.2006); *In re Openshaw,* No. 06C– 24120, 2007 WL 2916294 (Bankr.D.Utah Mar.12, 2007); *In re Riggs,* No. 06–60346, 2006 WL 2990218 (Bankr.W.D.Mo. Oct.12, 2006); *In re Rowe,* 342 B.R. 341 (Bankr. D.Kan.2006); *In re Ruona,* 353 B.R. 688 (Bankr.D.N.M.2006); *In re Steinhaus,* 349 B.R. 694 (Bankr.D.Idaho 2006).

17. Although Ford had the right to repossess, it is unclear why Ford exercised that right considering the economics, i.e. a debtor timely making payments and the secured debt significantly more than the value of the collateral.

validity of the repossession under state law.

### B. The bankruptcy court lacked jurisdiction to determine whether repossession is proper under state law

 District court jurisdiction over title 11 cases is granted by 28 U.S.C. § 1334. Bankruptcy court jurisdiction is found in 28 U.S.C. § 157(a), which permits the federal district courts to refer their jurisdiction over title 11 cases granted by 28 U.S.C. § 1334(b).[18] In the Ninth Circuit the test to determine whether a civil proceeding is "related to" a bankruptcy case "is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy."[19]

Here, the repossession took place after the petition was filed (and after discharge), thus any state law claim Dumont may have against Ford would not be property of the estate.[20] We do not see how any claim Dumont may have against Ford could conceivably affect the estate.[21] The bankruptcy case has been closed and regardless of the outcome of any suit in state court there appears to be no effect on this bankruptcy estate. Both Dumont's and Ford's rights and remedies under the Contract are defined and brought into existence by their Contract and are now governed by state law. Therefore, on these facts, we conclude that the bankruptcy court did not have jurisdiction to determine whether the repossession is valid under state law.

### VI. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is **AFFIRMED**.

---

**18.** 28 U.S.C. 1334(b) provides: "... the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

**19.** *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting from *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984), the definition of "related" proceedings under section 1334); *In re American Hardwoods, Inc.*, 885 F.2d 621 (9th Cir.1989).

**20.** Because sections 362(h) and 521(a)(6) apply here, the stay lifted and the property was no longer property of the estate.

**21.** *See Steinhaus*, 349 B.R. at 709 (questioning whether bankruptcy courts have jurisdiction to determine if the creditor can repossess under non-bankruptcy law).