GRABER, Circuit Judge,
dissenting:
I respectfully dissent.
May a bankruptcy debtor “ride through” bankruptcy — retaining possession of her motor vehicle, so long as she continues to make regular loan payments; or must the debtor instead invoke one of the three options described in 11 U.S.C. § 521(a)(2)(A)? Because of confusing and contradictory statutory text, courts have struggled for decades to discern congressional intent on the answer to that simple question. Indeed, before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (“BAPCPA”), the circuit courts were split five to four. Five circuits — including ours — had held that the ride-through option was available to debtors, while four circuits had held that it was not. See Maj. op. at 1109 & nn. 5-6 (collecting cases). The disagreement at the circuit court level represented only the tip of the iceberg. In scores of cases, district courts, bankruptcy appellate panels, and bankruptcy courts had weighed in on the debate,[1] as had commentators.[2]
The dispute centered on the text of 11 U.S.C. § 521(2) (2004), which BAPCPA re-designated as § 521(a)(2). Like many courts and commentators, we held that the text of § 521(2) plainly authorized the *1120 ride-through option. McClellan Fed. Credit Union v. Parker (In re Parker), 139 F.3d 668, 673 (9th Cir.1998); see also Home Owners Funding Corp. of Am. v. Belanger (In re Belanger), 962 F.2d 345 (4th Cir.1992) (reaching the same conclusion); 4 Collier on Bankruptcy ¶ 521.10 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (same). Other courts held that the text of § 521(2) plainly directed the opposite conclusion: Debtors must choose one of the three options listed in § 521(2)(A).[3] See, e.g., Taylor v. AGE Fed. Credit Union (In re Taylor), 3 F.3d 1512, 1517 (11th Cir.1993).
Our analysis in In re Parker, like the analysis provided by other courts and commentators, concerned two aspects of the text of § 521(2): the phrase “if applicable” in § 521(2)(A) and the text of § 521(2)(C). We reasoned in In re Parker:
The statute states that the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that the property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.
11 U.S.C. § 521(2)(A). Our interpretation of that language is that the only mandatory act is the filing of the statement of intention, which the debtor “shall” file. Then, “if applicable,” — that is, if the debtor plans to choose any of the three options listed later in the statute (claiming the property as exempt, redeeming the property, or reaffirming the debt) — the debtor must so specify in the statement of intention. The debtor’s other options remain available, as unambiguously stated in § 521(2)(C): “[Njothing in subparagraph[ ](A) ... shall alter the debtor’s or the trustee’s rights with regard to such property under this title.” We see no reason to reach beyond this plain language.
139 F.3d at 673 (alterations in original) (paragraph break omitted).
As explained by In re Belanger, “[t]he phrase ‘if applicable’ is redundant if ... the options given to the debtor are considered to be exclusive.” 962 F.2d at 348. And, of course, courts should give effect, if possible, to every word in a statute. Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). The Fourth Circuit suggested simple alternative text that Congress could have used if the options were exclusive, In re Belanger, 962 F.2d at 348 — a suggestion that was repeated 12 years later by the Third Circuit in In re Price, 370 F.3d at 371.
Against this backdrop, Congress enacted BAPCPA in 2005. The majority begins with the “assum[ption] that Congress intended to make ride-through available in all circuits, or none.” Maj. op. at 1112. I am not convinced. The legislative history is completely silent on the issue, with nary a reference to the vigorous public debate by the courts and commentators. In my view, the changes to the text indicate an intent to perpetuate the extant circuit split, not resolve it.
Most importantly, § 521(a)(2)(A) remains entirely unchanged. The all-important “if applicable” phrase — the very source of disagreement among circuit courts, district courts, bankruptcy courts, and commentators — remains intact. Congress not only declined to adopt the Fourth Circuit’s suggested text, it declined to make any change whatsoever.
*1121 I acknowledge, of course, that Congress did modify § 521(a)(2)(C) to include an exception for new § 362(h). But my examination of that section suggests that, if anything, Congress intended no change to the existing circuit split. The new section requires, in relevant part, that the debtor must
indicate in such statement [of intention] that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable [.]
11 U.S.C. § 362(h)(1) (emphasis added). The text of § 362(h) thus parallels the text of § 521(a)(2)(A) in that it requires the debtor to follow one of three options “if applicable,” § 521(a)(2)(A), or “as applicable,” § 362(h)(1).[4]
When faced with confusing and contradictory amendments to already confusing and contradictory statutory text,[5] what should we do? The majority reasonably starts from a presumption that Congress must have intended to resolve the circuit split and the more general principle that Congress intended uniformity in the bankruptcy laws. As explained above, though, I am not convinced that those presumptions apply here. In the context of this case, I would fall back on two different— and equally relevant — presumptions guiding statutory interpretation.
First, as a general matter, “ ‘Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it reenacts a statute without change.’ ” Forest Grove Sch. Dist. v. T.A., — U.S.-, 129 S.Ct. 2484, 2492, 174 L.Ed.2d 168 (2009) (quoting Lorillard v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)). As noted above, the differing judicial interpretations were well known and were encapsulated in the five-four circuit split. Yet Congress did not amend § 521(a)(2)(A) or the critical phrase “if applicable,” even though courts and commentators across the nation had provided different interpretations of that section. Additionally, although Congress amended § 521(a)(2)(C) to include the new § 362(h), it carried forward the important qualifier “applicable.” “[A]bsent a clear expression elsewhere in the Amendments of Congress’ intent to repeal some portion of that provision or to abrogate [the circuit split],” Forest Grove, 129 S.Ct. at 2492 (emphasis added), we should continue to read the statute as we did pre-BAPCPA. As I read the BAPCPA amendments, no such “clear expression” emerges.
I pause to note that I do not disagree with the majority that the general “direction and tenor of the changes ... suggest that Congress did not intend to increase access to ride-through by passing BAPCPA.” Maj. op. at 1112. But the general “direction and tenor” of a statuto *1122 ry amendment is not the correct inquiry. The correct inquiry is congressional intent with respect to the specific issue. Furthermore, I readily agree that “Congress did not intend to increase access to ride-through by passing BAPCPA.” In my view, though, Congress decided to do nothing — neither increasing nor decreasing access to ride-through. Rather, Congress simply side-stepped the contentious ride-through issue, thus perpetuating the circuit split.
Second, specific to the Bankruptcy Code, the overarching guiding principle of statutory interpretation, “again and again emphasized by the courts,” Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), strongly supports my view: “The pi’incipal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor,” Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (internal quotation marks omitted). Here, Dumont filed for bankruptcy, stated her intent to retain the car as a ride-through, and declined Ford’s request to reaffirm the debt. Ford filed a claim with the bankruptcy court but, so far as the record reveals, never objected to Dumont’s statement of intent or her rejection of the offer of reaffirmation. The bankruptcy case proceeded in the normal course, and the bankruptcy court issued an order of discharge. At all times — both during the bankruptcy proceedings and after the discharge order — Dumont continued to make her regularly scheduled loan payments to Ford. Months after the discharge and without any notice to Dumont, Ford repossessed Dumont’s car. As can be imagined, Dumont claims that the repossession of her only means of transportation, without any notice whatsoever, caused her great difficulties.[6] It is hard — if not impossible — to reconcile Ford’s actions with the principal purpose of the Bankruptcy Code: to give Dumont a “fresh start.” In the absence of a clear congressional intent approving Ford’s actions, I would not read such an intent into the statute.
In conclusion, I borrow text, equally applicable here, from my colleagues in a recent bankruptcy appeal concerning a different perplexing provision:
The “correct” answer to the question before us, which the courts have been struggling with for years — at the unnecessary cost of thousands of hours of valuable judicial time — depends ultimately not upon our interpretation of the statute, but upon what Congress wants the answer to be. We would hope, in this regard, that we the judiciary would be relieved of this Sisyphean adventure by legislation clearly answering a straightforward policy question: [May debtors invoke the “ride-through” option?]
Ransom v. MBNA, Am. Bank, N.A. (In re Ransom), 577 F.3d 1026, 1032 (9th Cir. 2009). In contrast to the situation in In re Ransom, we have already answered the question at hand. In re Price, 370 F.3d at 371. Because the BAPCPA amendments add only confusion, I would not overrule In re Price.

. See, e.g., Mayton v. Sears, Roebuck & Co. (In re Mayton), 208 B.R. 61, 64 (B.A.P. 9th Cir. 1997) (resolving the ride-through issue while noting the "marked disagreement among bankruptcy courts and district courts”); Sears Roebuck & Co. v. Lamirande, 199 B.R. 221, 223 (Bankr.D.Mass.1996) (noting that ”[c]ourts across the country have split” on the ride-through issue and, in the absence of binding precedent, adopting the more persuasive position); In re Kennedy, 137 B.R. 302, 303-04 (Bankr.E.D.Ark.1992) (noting that "[n]umerous bankruptcy courts ... have ruled on this issue[ ] with little consistency in results” and, because "[tjhere is no controlling authority in this district,” adopting the “more persuasive” position).

. See, e.g., 4 Collier on Bankruptcy ¶ 521.10 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (advancing the Ninth Circuit’s view and criticizing the opposing view’s reading of the statute); Scott B. Ehrlich, The Fourth Option of Section 521(2)(A) — Reaffirmation Agreements and the Chapter 7 Consumer Debtor, 53 Mercer L.Rev. 613, 700 (2002) (asserting that the ride-through issue "affects billions of dollars in assets and has great importance for both debtors and creditors”); Marianne B. Culhane & Michaela M. White, But Can She Keep the Car? Some Thoughts on Collateral Retention in Consumer Chapter 7 Cases, 7 Fordham J. Corp. & Fin. L. 471, 498 (2002) (arguing that ”[b]oth debtors and creditors would be better served by recognizing a debtor’s right to ride-through on some collateral”); Lawrence Ponoroff, Surfs Up, Dude: Riding Through Bankruptcy, 7 J. Bankr.L. & Prac. 101, 101-02 (1997) (noting the “decided and disturbing lack of consensus” among courts and discussing the National Bankruptcy Review Commission’s review of the ride-through issue); Ned W. Waxman, Redemption or Reaffirmation: The Debtor’s Exclusive Means of Retaining Possession of Collateral in Chapter 7, 56 U. Pitt. L.Rev. 187, 187 (1994) (stating that the ride-through issue is ”[t]he most controversial consumer credit issue arising in [bankruptcy] cases”).

. Other courts looked beyond the text, to policy considerations. See Price v. Del. State Police Fed. Credit Union (In re Price), 370 F.3d 362, 367-68 (3d Cir.2004) (summarizing cases).

. I tend to agree with Ford that the phrase "as applicable” — if read in isolation — more strongly suggests that one of the three options must be selected. Given the context of the BAPCPA amendments, the long-standing jurisprudence and commentary on the ride-through option, and the interplay between § 521 and § 362, however, I decline to assign much weight to the potential distinction between "if applicable” and “as applicable.” The phrase "as applicable” is not so rigid as to command that one of the listed options must be followed.

. The majority readily acknowledges the confusing nature of the amendments. Maj. op. at 1110 & n. 11.

. As courts have noted, a debtor's personal automobile is often ''vital” to the debtor (and the estate) because, for example, the ‘‘automobile [is] used to commute to one’s workplace.” In re Price, 370 F.3d at 378 n. 10. Additionally, a debtor’s financial situation and access to financing for a new vehicle during— or, as here, immediately following — bankruptcy is generally limited, because she recently has filed for bankruptcy. Capital Commc’ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 52 (2d Cir. 1997).