FILED

DEC 09 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )   BAP No. CC-11-1156-HKiMk
                                    )
CHRISTOPHER DOLAN OBMANN and        )   Bk. No. 11-12906
REBECCA LYNN OBMANN,                )
                                    )
            Debtors.                )
_____     )
                                    )
SAN DIEGO COUNTY CREDIT UNION;      )
THERESA HALLECK,                    )
                                    )
            Appellants,             )
                                    )
v.                                  )   **M E M O R A N D U M**[1]
                                    )
CHRISTOPHER DOLAN OBMANN;           )
REBECCA LYNN OBMANN;                )
CHRISTOPHER R. BARCLAY,             )
Chapter 7 Trustee; UNITED           )
STATES TRUSTEE,                     )
                                    )
            Appellees.              )
_____     )

Argued and Submitted on October 20, 2011
at San Diego, California

Filed - December 9, 2011

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine Bauer, Bankruptcy Judge, Presiding

---

Appearances:    William Arthur Smelko, Esq. argued for the
                Appellant, San Diego County Credit Union.

---

Before: HOLLOWELL, KIRSCHER and MARKELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

San Diego County Credit Union (SDCCU) appeals an order of the bankruptcy court that (1) disapproved a reaffirmation agreement that SDCCU entered into with the debtors, (2) ordered SDCCU to accept the debtors' payments, and (3) enjoined SDCCU from repossessing its collateral so long as the debtors made payments and otherwise fulfilled their obligations to SDCCU.

For the reasons given below, we AFFIRM the disapproval of the reaffirmation agreement, but VACATE the portion of the bankruptcy court's order that requires SDCCU to accept payments and refrain from exercising its state law contractual remedies.

## I.   FACTS

Christopher and Rebecca Obmann (the Debtors) filed a joint petition for relief under chapter 7[2] on January 28, 2011.  On their bankruptcy schedules, the Debtors listed an $18,496.00 obligation to SDCCU secured by a 2004 Chevrolet Silverado (Silverado).  They also listed a $7,003.00 obligation to SDCCU secured by a 2004 Nissan Frontier (Nissan).  According to the Debtors' schedules I and J, they had a combined average monthly income of $9,126.20 and expenditures of $9,938.00, which included a $778.00 payment on the Silverado, as well as a $261.00 payment on the Nissan.

Along with their schedules, the Debtors filed a Statement of Intention with respect to the Silverado.  On the Statement of Intention form (Official Form 8), the Debtors checked the box

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

indicating that they intended to retain the Silverado, but did not check either the "Redeem the property" box or the "Reaffirm the debt" box. Instead, the Debtors checked a box entitled "Other" and wrote "Retain and pay pursuant to contract." The Debtors indicated the same intention with respect to the Nissan.

On February 3, 2011, the Debtors attempted to make a payment on the Silverado under their loan agreement with SDCCU (the Loan). At that time, the Debtors were already behind on the Loan because they had failed, prepetition, to make their January payment. Under the terms of the Loan, a filing of a bankruptcy proceeding, as well as a failure to make any payment when due, were events of default, entitling SDCCU to accelerate all payment on the Loan and to exercise its state law rights against the Silverado, including repossession.

SDCCU refused to accept the Debtors' February 3, 2011, payment on the Loan. It told the Debtors it would not accept payments unless there was an enforceable reaffirmation agreement in place. On February 8, 2011, the Debtors and SDCCU executed an agreement to reaffirm the debt secured by the Silverado (the Reaffirmation).[3] The Reaffirmation reaffirmed the $13,495.58 remaining balance on the Silverado under the original terms of the Loan. The Debtors listed the value of the Silverado as $19,875.00. They filed the executed Reaffirmation with the bankruptcy court on February 14, 2011.

The § 341 meeting of creditors was scheduled for March 9,

---

[3] The Debtors filed a similar reaffirmation agreement for the Nissan. The Debtors' attorney did not represent them with respect to either of the reaffirmation agreements.

2011.  Also on March 9, 2011, the bankruptcy court held a hearing on whether to approve the Reaffirmation (the Reaffirmation Hearing).  At the Reaffirmation Hearing, the bankruptcy court expressed its concern that SDCCU, by refusing to accept payments, was purposely forcing debtors into defaulting on their loans until the court approved a reaffirmation agreement.  It continued the hearing to March 30, 2011, and entered an order requiring the president and CEO of SDCCU, Teresa Halleck (the CEO), to appear:[4]

> to explain its policies and procedures[5] regarding bankruptcy, since it appears that either the Credit Union fundamentally misunderstands the purpose and extent of the automatic stay and/or that it is purposely forcing debtors into defaulting on their car loans under some misconception that this Court will then be forced to approve reaffirmation agreements that are not advisable (especially in view of the forced defaults) . . . .

---

[4] On March 18, 2011, SDCCU filed an objection and an emergency ex-parte motion to modify the order to appear and excuse the CEO from appearing.  The declaration from SDCCU, attached to its motion, explained its policies, as well as the Debtors' history on the Loan, including the fact that the Debtors were not current on their payments prior to filing bankruptcy. On March 25, 2011, the bankruptcy court denied SDCCU's ex-parte motion.  SDCCU and the CEO timely appealed.  (BAP Nos. 11-1155, 11-1158).  The BAP subsequently dismissed those appeals as moot on June 9, 2011, because the CEO appeared and testified at the hearing.

[5] However, the bankruptcy court was aware of the reasons for SDCCU's policy because it had previously ordered SDCCU to appear in other cases to explain why SDCCU refused customers' payments prior to approval of a reaffirmation agreement.  SDCCU's Assistant Vice President of Legal Services previously appeared before the bankruptcy court to testify about SDCCU's reaffirmation policy.

-4-

The Debtors appeared at the continued hearing but did not testify. The CEO appeared and testified that SDCCU did not accept customer payments unless there was an enforceable agreement between the parties, otherwise she believed that SDCCU risked having to return any payments made if there was not a court-approved reaffirmation in effect. The CEO further testified that SDCCU believed that a failure to obtain an enforceable reaffirmation would compromise SDCCU's future ability to exercise its state law remedies.

The bankruptcy court disapproved the Reaffirmation as not in the Debtors' best interest because, despite reaffirming the debt, they would still be exposed to potential repossession of the Silverado due to payment defaults, which the bankruptcy court apparently believed were solely the result of SDCCU's refusal to accept the Debtors' postpetition payments. On March 31, 2011, the bankruptcy court entered an order disapproving the Reaffirmation (Reaffirmation Order).[6]

In its Reaffirmation Order, the bankruptcy court found that the Reaffirmation posed an undue hardship on the Debtors and was not in their best interest. Additionally, the Reaffirmation Order stated that "SDCCU shall accept any and all payments that Debtors are past due and shall have no right to repossess the

_____

[6] An identical order was entered denying reaffirmation on the Nissan. SDCCU did not appeal that order. However, at least one similar order that required SDCCU to be bound by the terms of the original agreement with the debtor as long as the debtor made payments, was entered by the bankruptcy court in a different case and was appealed by SDCCU. That appeal became moot when the collateral was surrendered, and was subsequently dismissed.

subject vehicle so long as Debtors make their payments, keep the vehicle insured, and otherwise fulfill their obligations to SDCCU." SDCCU timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in entering the Reaffirmation Order?

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's interpretation of the Bankruptcy Code de novo. Bankr. Receivables Mgmt. v. Lopez (In re Lopez), 274 B.R. 854, 859 (9th Cir. BAP 2002), aff'd, 345 F.3d 701 (9th Cir. 2003), cert. denied, 124 S.Ct. 2015 (2004); Dumont v. Ford Motor Credit Co. (In re Dumont), 383 B.R. 481, 484 (9th Cir. BAP 2008), aff'd, 581 F.3d 1104 (9th Cir. 2009). The requisite procedure for issuing injunctions is a question of law that we review de novo. Demos v. Brown (In re Graves), 279 B.R. 266, 270 (9th Cir. BAP 2002). Additionally, whether adequate due process was given in a particular instance is a mixed question of law and fact that we also review de novo. Id.

The bankruptcy court's factual findings are reviewed for clear error. United States v. Hinkson, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc). A factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that can be drawn from the facts in the record. Id. at 1263.

**V.    DISCUSSION**

An individual debtor in a chapter 7 case is required to timely redeem, surrender, or reaffirm debts secured by personal property.  11 U.S.C. § 521(a)(2).  Section 521(a)(2) requires that for every debt secured by personal property of the estate, a debtor must file a statement of intention with respect to the retention or surrender of the property.  The debtor must file his statement of intention within 30 days of the filing of a petition or before the first date scheduled for the meeting of creditors, whichever is earlier.  When a debtor elects to retain the property, he <u>must</u> specify in his statement of intention whether he will redeem it or reaffirm the debt secured by the property.  11 U.S.C. § 521(a)(2)(A).  Additionally, the debtor must perform on his stated intention within 30-days of the § 341 meeting of creditors.  11 U.S.C. § 521(a)(2)(B).

A failure to comply with the requirements of § 521(a)(2)(A) and (B) results in the termination of the automatic stay "with respect to personal property of the estate or of the debtor securing in whole or in part a claim, . . . and such property shall no longer be property of the estate."  11 U.S.C. § 362(h)(1); <u>Samson v. W. Capital Partners, LLC (In re Blixseth)</u>, 454 B.R. 92 (9th Cir. BAP 2011) (the exception to the rule is if on the bankruptcy trustee's timely motion the bankruptcy court determines the property is of consequential value to the estate).

In this case, the Debtors filed a statement of intention and indicated that they intended to retain the Silverado.  However, the Debtor's statement of intention did not state whether they intended to redeem the Silverado or reaffirm the Loan.

Therefore, the Debtors failed to comply with § 362(h)(1)(A). See e.g., In re Steinhaus, 349 B.R. 694, 701 (Bankr. D. Idaho 2006). SDCCU argues, therefore, that the automatic stay terminated at the time the bankruptcy court held the Reaffirmation Hearing.

Nevertheless, SDCCU concedes that the bankruptcy court had jurisdiction to review the Reaffirmation. Consequently, we need not decide whether the automatic stay was, in fact, terminated at the time of the Reaffirmation Hearing, or, whether a debtor may amend his original intention prior to the time he must perform on that intention and thereby cure any previous defect. See e.g., In re Norton, 347 B.R. 291, 296-98 (Bankr. E.D. Tenn. 2006) (finding termination of automatic stay could not occur until the deadline of § 521(a)(2)(B) had passed); Arizona Fed. Credit Union v. DeSalvo, 2009 WL 5322428 *3 (Bankr. S.D. Ga. 2009); In re Bower, 2007 WL 2163472 *2 n.2 (Bankr. D. Or. 2007) (an improper statement of intention can be "cured" by a timely filed reaffirmation agreement); In re Baker, 390 B.R. 524, 529 (Bankr. D. Del. 2008) (same).

Debtors may reaffirm dischargeable debts. 11 U.S.C. § 524. However, in order to protect debtors from compromising their fresh start by making unwise agreements to repay such debts, the Bankruptcy Code sets out various procedures and requirements for approval of reaffirmation agreements. Id.; Gordon v. Hines (In re Hines), 147 F.3d 1185, 1190 (9th Cir. 1998); Rogers v. NationsCredit Fin. Servs. Corp., 233 B.R. 98, 107 (N.D. Cal. 1999). These include requiring creditors to make detailed disclosures of the legal ramifications of reaffirmation. 11 U.S.C. § 524(k). Additionally, when, as here, the debtor is

-8-

not represented by an attorney, the bankruptcy court must inform the debtor that reaffirmation is not required, describe the legal consequences of reaffirming a debt, and decide whether reaffirmation is in the debtor's best interest or poses an undue hardship. 11 U.S.C. § 524(d), (c)(6).

Section 524(m)(1) raises a rebuttable presumption that a reaffirmation agreement imposes an undue hardship on the debtor when the debtor's monthly income, less the debtor's monthly expenses, is less than the scheduled payments on the reaffirmed debt. 11 U.S.C. § 524(m)(1). The bankruptcy court is required to review all agreements, regardless of whether a debtor is represented or appearing in pro se, when the presumption of undue hardship exists; however, the presumption is waived when the creditor of a reaffirmed debt is a credit union. 11 U.S.C. § 524(m)(2).

Even though there was no presumption of undue hardship that required rebuttal by the Debtors, because they were unrepresented, the bankruptcy court was required to decide whether the Reaffirmation imposed an undue hardship and was in their best interest. 11 U.S.C. § 524(c)(6)(A)(i),(ii); Coastal Fed. Credit Union v. Hardiman, 398 B.R. 161, 178 (E.D. N.C. 2008); In re Smith, 2011 WL 671994 *1 (Bankr. N.D. Iowa 2011); In re Huskinson, 2008 WL 2388113 *2 n.7 (Bankr. N.D. Ohio 2008).

To that end, the bankruptcy court found that the payments on the Silverado were large and that the Debtors' expenses significantly exceeded their income making it an undue hardship on the Debtors. Furthermore, the bankruptcy court found it was not in the Debtors' best interest to reaffirm the debt because

there was no assurance that SDCCU would honor a purported verbal agreement to work with the Debtors to cure any default, and reaffirmation would make the Debtors personally liable for any deficiency balance on the Loan.

These findings were supported by the record. The Debtors' schedules demonstrated that their expenses significantly exceeded their income. The record, including the testimony provided by the CEO, demonstrated that the Debtors had defaulted on the Loan, and that as a result of those defaults, SDCCU was entitled to enforce its rights under the Loan. Accordingly, we perceive no error in the bankruptcy court's decision in disapproving the Reaffirmation under § 524(c)(6)(A)(i) and (ii).

SDCCU contends that even though the bankruptcy court could disapprove the Reaffirmation under § 524(c)(6)(A), it could not enjoin SDCCU from enforcing its rights under the Loan. SDCCU particularly assigns error to the bankruptcy court's issuance of an injunction without an adversary proceeding.

SDCCU contends that the issuance of injunctive relief and declaratory relief may only result from an adversary proceeding. Rule 7001, 7065. SDCCU relies on case authority where a bankruptcy court was asked to grant injunctive relief. We agree that in those situations, the request must procedurally be made through an adversary proceeding. However, SDCCU's premise that an adversary proceeding is always required before an injunction can by issued by a bankruptcy court is belied by the plain

///

///

///

-10-

language of § 105(a)[7], which allows the bankruptcy court to act sua sponte to issue any order that is necessary to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).

Therefore, "[i]njunctive relief is available in bankruptcy court in two ways: pursuant to the court's discretionary and inherent equitable power under section 105(a) 'to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,' or under the auspices of Bankruptcy Rule 7065." Rinard v. Positive Invest., Inc. (In re Rinard), 451 B.R. 12, 22 (Bankr. C.D. Cal. 2011); Eisen v. Golden (In re Eisen), 2006 WL 6810928 (9th Cir. BAP 2006) (unpublished).

The bankruptcy court did not cite to § 105(a) as the basis of its authority, but we presume that it relied on its equitable powers when it required SDCCU to accept payments and to suspend its state law contractual rights to the Silverado.  While § 105(a) permits the bankruptcy court to impose injunctions, there are limitations on that power. In re Graves, 279 B.R. 266 at 274.  First, when acting in a matter that ordinarily requires an adversary proceeding, the bankruptcy court must assure that

---

[7] Section 105(a) provides that:

[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

the defendant is afforded the procedural protection of due process. Id. at 272. Second, the remedy must conform to the objectives of the Bankruptcy Code. Id.; Beck v. Fort James Corp. (In re Crown Vantage, Inc.), 421 F.3d 963, 975 (9th Cir. 2005).

Due process requires a notice and an opportunity to be heard. Tennant v. Rojas (In re Tennant), 318 B.R. 860, 870 (9th Cir. BAP 2004). "Notice and an opportunity to be heard" is a flexible concept that depends on what is appropriate in the particular circumstance. Id. At a minimum, however, notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 314 (1956). Here, SDCCU was provided notice of the bankruptcy court's concern that SDCCU misunderstood "the purpose and extent of the automatic stay and/or that it is purposely forcing debtors into defaulting on their car loans under some misconception that this Court will then be forced to approve reaffirmation agreements that are not advisable (especially in view of the forced defaults)." SDCCU was given the opportunity to be heard with respect to that concern when the CEO testified about SDCCU's policies and procedures.[8] Accordingly, SDCCU was afforded the requisite due

---

[8] The record demonstrated that the bankruptcy court had ordered SDCCU to appear before it in the past to discuss its policies and position regarding its non-acceptance of payments before a reaffirmation becomes enforceable. Therefore, SDCCU was aware of the bankruptcy court's concerns. Moreover, the bankruptcy court had entered orders similar to the Reaffirmation Order in at least two prior cases involving SDCCU.

-12-

process prior to the entry of the bankruptcy court's Reaffirmation Order.

Nevertheless, the bankruptcy court acted outside the limits of its § 105(a) authority because it imposed a remedy that was not contemplated by the Bankruptcy Code. Bankruptcy courts have "broad authority" under § 105(a) to take action necessary to prevent an abuse of process. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 375 (2007). Indeed, that power has been used to craft various remedies for a range of conduct. See In re Kmart Corp. 359 F.3d 866, 871 (7th Cir. 2004) (compiling cases). Nevertheless, § 105(a) does not allow "free-floating discretion in accordance with the court's personal views of justice and fairness" (Id. at 871) or amount to "a roving commission to do equity." Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1174 (9th Cir. 2003). A bankruptcy court may only exercise its equitable power as a means to fulfil some specific provision within the Bankruptcy Code. Marrama v. Citizens Bank of Mass., 549 U.S. at 382 (citing N.W. Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988)). Its authority may be invoked "only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code." Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 403 (1st Cir. 2002) (internal citations omitted).

The bankruptcy court did not identify any Bankruptcy Code section to support its conclusion that SDCCU had to accept payments that were tendered by a debtor. The bankruptcy court's statements on this issue included:

-13-

"[I]f I don't approve a reaffirmation where the people have been trying to make the payments, you're going to go pick up the car unless they pay it off? . . . it's not compliant with federal bankruptcy law."

Hr'g Tr. (March 31, 2011) at 12:2-5, 16-17.

and,

"[Y]ou are purposefully putting people in default . . . And I don't think that's a good thing to do. I don't think it's a good policy."

Id. at 12:21-22, 13:1-2.

Section 524(l) provides that a creditor "may accept" payments from a debtor before and after the filing of a reaffirmation agreement. However, a creditor does not violate the Bankruptcy Code by refusing to accept payments tendered by a debtor. Additionally, we did not find any other federal law that may apply. For example, we reviewed provisions regarding creditor/debtor relationships, including payments on debt obligations, contained in the Truth In Lending Act (TILA). See 15 U.S.C. § 1601 et. seq. While TILA provides that a creditor shall credit a payment[9] to a consumer's account as of the date of receipt, it allows the creditor to specify reasonable requirements for conforming payments, which can include designating certain procedures, or cut off times, for payments. Id. Implementing Regulation Z, 12 C.F.R. § 226.10. We found

_____

[9] A "payment" presumes that the debtor delivered money in performance of an obligation and that the creditor accepted it as extinguishing that performance in whole or in part. 1129 Black's Law Dictionary, 6th ed. 1990.

-14-

nothing within TILA that requires a creditor to <u>accept</u> the tender.

We also did not find other federal banking laws that include provisions regarding payment obligations between creditors and debtors. Neither do we find any California law that requires a creditor to accept payments tendered to it. In any event, the bankruptcy court could not use its § 105 powers to implement state law unless there was also a comparable objective set out in the Bankruptcy Code.

In this case, the Debtors were in default on the Loan prepetition. By requiring that SDCCU accept the Debtors' payments and refrain from exercising its state law rights under the Loan, the bankruptcy court ordered SDCCU to accept a cure of the Debtors' default. Such authority is beyond the reach of the bankruptcy court. <u>In re Jamo</u>, 283 F.3d at 403 (court lacked power to modify proposed reaffirmation arrangement and compel credit union to enter into judicially-crafted reaffirmation agreement).

SDCCU makes a final argument that the bankruptcy court's injunction effects an impermissible expansion of the discharge injunction or the automatic stay that is not intended by the Bankruptcy Code. It asserts that the bankruptcy court "expressly [stated] that if the Debtors wanted to return the vehicle at some point in the future, the Debtors could also demand their payments on this 'discharged debt' back from SDCCU and SDCCU would be obligated to return the payments." <u>See</u> Appellant's Opening Brief at 20. However, neither the record nor the terms of the Reaffirmation Order supports SDCCU's

-15-

assertion. Whether a discharged debt that is voluntarily paid by a debtor must later be refunded is not at issue in this appeal, and therefore, will not be addressed.[10]

## VI. CONCLUSION

The bankruptcy court did not abuse its discretion in denying the Reaffirmation; however, it acted beyond its authority in ordering SDCCU to accept a cure of the Debtors' default on the Loan and enjoining SDCCU from pursuing its state law remedies. Therefore, we AFFIRM the bankruptcy court's disapproval of the Reaffirmation, but VACATE the portion of the Reaffirmation Order that orders SDCCU to accept the Debtors' payments, and that enjoins SDCCU from repossessing the Silverado so long as the Debtors make payments and otherwise fulfill their obligations to SDCCU.

---

[10] At most, the bankruptcy court referenced the possibility, but never decided the issue. It stated:

> I worked at Bank of America for 16 years, and we always took payments. Always took payments. We always took payments. Once in a while when somebody would say: Look, I decided I'm not going to reaffirm, we gave the money back. But I will tell you, we made a lot more money by taking the payments than we ever lost by giving back money.

Hr'g Tr. (March 31, 2010) at 14:21-25; 15:1-2.